Special Grand Jury Proceedings.

In re Eugene S. RENO.

Misc. No. 71–135.

United States District Court,
E. D. Michigan, S. D.

Sept. 15, 1971.

Laurence Leff, U. S. Dept. of Justice, Detroit, Mich., Atty. in Charge, Detroit Strike Force, for the Government.

Armand D. Bove, Harper Woods, Mich., for the witness Eugene S. Reno; Robert S. Harrison, Norman L. Lippitt, Detroit, Mich., of counsel.

## MEMORANDUM

### (Immunity Hearing)

THORNTON, District Judge.

The Government here seeks an order granting immunity to the witness, Eugene S. Reno, with respect to testimony the Government seeks to elicit from him before the Special Grand Jury for the Eastern District of Michigan, presently in session. The immunity sought is pursuant to 18 U.S.C. § 2514. Reno, a sergeant in the Detroit Police Department, through his counsel, in objecting to the offered immunity stated in his argument to the Court at the court hearing in this matter, as follows:

" * * * [I]f this witness is ordered and compelled to testify before the Grand Jury, his testimony is taken by the Grand Jury, and he is immune from criminal prosecution, but under Section 3333 he is not immune to disciplinary action as a result of a report issued by the Grand Jury at the expiration of its term or an extension of that term, to the Police Commissioner and to the public, thereby recommending disciplinary action and removal from office as a police officer." (Tr. p. 4)

Some background of the situation here present is succinctly supplied in the Government's Memorandum in Support of the Validity of the Grant of Immunity to the Witness Eugene S. Reno. We quote the following four paragraphs:

"On May 6, 1971, a Special Grand Jury in the Eastern District of Michigan returned an indictment charging sixteen (16) members of the Detroit Police Department and eighteen (18) syndicated gamblers with engaging in a conspiracy to violate the anti-gambling statutes of the State of Michigan and obstructing the enforcement of said statutes in order to facilitate the operation of a gambling enterprise, all of which violated Federal law (Title 18, United States Code, Sections 1955, 1511, 371 and 2).

On May 12, 13, and 14, 1971, fourteen (14) additional Police Officers, unindicted, appeared, pursuant to subpoenae, before the Grand Jury. In each case, the witness was asked about acquaintanceships, meetings, or conversations with named, known gamblers. Without exception, the witnesses declined to answer the questions on various grounds, including the peril of self-incrimination, the invalidity of the subpoena which brought them before the Grand Jury, and the right to have counsel at their side in the Grand Jury room during their examination.

Subsequently, Judge Philip Pratt, United States District Judge, was asked to rule on the issues raised by the witness's unwillingness to testify before the Grand Jury. Judge Pratt held that the invocation by the witnesses of their privilege of self-incrimination constituted a valid justification for declining to answer the questions. However, the remaining grounds asserted by them, the Court found to be without merit.

Thereafter, four (4) of the previously mentioned Police Officer witnesses were granted immunity from prosecution, pursuant to Title 18, United States Code, Section 2514, and were directed by the District Court to testify in the Grand Jury. They each testified, without objection to the grant of immunity."

The Government has indicated that the issue here is one of first impression, Section 3333 having been in existence only since the enactment of the Organized Crime Control Act of 1970. Neither counsel for the Government nor counsel for Reno has cited a case to the Court where Section 3333 was at issue vis-a-vis the Fifth Amendment. The Court has likewise been unable, despite considera-

ble research, to find case law on this point involving Section 3333 or any comparable statutory reporting provision that might shed light by way of analogy. The trail doubles back again and again to Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). The cases since *Ullmann* pay homage to it. We are unable to find a legal basis or any justification for circumventing that which has been expressed exactly in *Ullmann* by Mr. Justice Frankfurter:

"Petitioner, however, attempts to distinguish Brown v. Walker [161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819]. He argues that this case is different from Brown v. Walker because the impact of the disabilities imposed by federal and state authorities and the public in general—such as loss of job, expulsion from labor unions, state registration and investigation statutes, passport eligibility, and general public opprobrium—is so oppressive that the statute does not give him true immunity. This, he alleges, is significantly different from the impact of testifying on the auditor in Brown v. Walker, who could the next day resume his job with reputation unaffected. But, as this Court has often held, the immunity granted need only remove those sanctions which generate the fear justifying invocation of the privilege: 'The interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the Amendment ceases to apply.' Hale v. Henkel, 201 U.S. 43, 67, 26 S.Ct. 370, 50 L.Ed. 652. Here, since the Immunity Act protects a witness who is compelled to answer to the extent of his constitutional immunity, he has of course, when a particular sanction is sought to be imposed against him, the right to claim that it is criminal in nature." Ullmann v. United States, *supra*, pp. 430–431, 76 S.Ct. p. 502.

In the case of Carter v. United States, 417 F.2d 384 (9th Cir. 1969) the loss of job possibility as a result of testifying under a grant of immunity was rejected as a sustainable basis for refusal to testify. See *Carter* at page 387 and the cases cited, including *Ullmann*. See also De Vita v. Sills, 422 F.2d 1172, 1179 (3rd Cir. 1970) and December 1968 Grand Jury v. United States, 420 F.2d 1201, 1203 (7th Cir. 1970).

Section 3333 provides for reporting procedures based on information obtained through testimony from Grand Jury witnesses. The overall effect is somewhat similar to that of presentments. In each situation Grand Jury proceedings are not kept in absolute secrecy. A full discussion of this aspect of Grand Jury proceedings is found in In Re Grand Jury January, 1969, 315 F.Supp. 662 (D.Md. 1970).

The grant of immunity hereby offered to the witness, Reno, is coextensive with his privilege and, therefore, sufficient.