UNITED STATES of America ex rel. John Alexander WOMACK and James Andrew Robinson, Petitioners,

v.

The UNITED STATES ATTORNEY FOR the NORTHERN DISTRICT OF ILLINOIS, and The United States Marshal For the Northern District of Illinois, Respondents.

No. 72 C 1949.

United States District Court, N. D. Illinois, E. D.

Sept. 27, 1972.

Edward J. Calihan, Jr., Chicago, Ill., for petitioners.

James Thompson, U. S. Atty., James C. Murray, Jr., Asst. U. S. Atty., Chicago, Ill., for respondents.

## MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

EDWIN A. ROBSON, Chief Judge.

Relators, Womack and Robinson, were granted "transactional immunity" and ordered to testify before a grand jury of this district, which was investigating interstate gambling activity. They refused to do so, were adjudged in civil contempt, and were committed to custody on May 25, 1971. Their appeal was dismissed as frivolous by the Court of Appeals, In re Womack, Order No. 71–1405 (7th Cir. June 17, 1971), and certiorari was denied. Womack v. United States, 404 U.S. 850, 92 S.Ct. 86, 30 L. Ed.2d 89 (1971). This court dismissed a previous attack upon the contempt judgment based upon an allegation of illegal surveillance, and its decision was affirmed by the Court of Appeals. United States ex rel. Womack v. Meisz- ner, 466 F.2d 555 (7th Cir. 1972). Relators now advance three new contentions against the validity of the contempt judgment.

## EQUAL PROTECTION

Relators first contend that they are denied due process of law as required by the Fifth Amendment because the statutes under the authority of which they are incarcerated rest upon an arbitrary and unreasonable classification. They much belabor the proposition that federal due process embraces the concept of equal protection, citing cases from Scott v. Sandford, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1857) ("The Dred Scott Case") to the present, but Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), definitively establishes this proposition in any event. The issue for consideration is whether the classification in question has a rational and reasonable basis and is thus constitutionally valid.

The statute, 18 U.S.C. § 3331(a), provides that special grand juries shall be called in all districts containing four million inhabitants or more (i. e., New York, Los Angeles, and Chicago) or in any district in which the Attorney General or his designate certifies that in his judgment a special grand jury is necessary because of criminal activity within the district (e. g., Newark and Detroit). Relators refused to testify before a special grand jury empaneled under the former provision and assert that they are being arbitrarily chosen because of their residence in a large metropolitan area for harsh treatment inasmuch as the life of a special grand jury—and consequently their incarceration—may be twice as long as that of normal grand jury. This argument ignores the fact that a special grand jury may be called into existence in any district of the country. And once a special grand jury is called, its term and its burden upon witnesses is uniform in all districts. There is therefore no merit in relators' contention that they are discriminated against.

Relators attempt to meet the fact that all witnesses before special grand juries are treated uniformly by attacking the delegation of discretion to the Attorney General or his delegate to certify in which lesser populated districts a special grand jury is necessary, citing A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). Assuming even that those cases are relevant in areas of the law other than the delegation of regulatory authority to an administrative agency, they are inapplicable here because the very vice which they condemned, the absence of standards which would limit the actions of the agency to the will of Congress and which would prevent the agency from itself legislating, is absent. The statute itself provides that the Attorney General or his delegate shall certify that a special grand jury is necessary in a less populated area "because of criminal activity in the district." 18 U.S.C. § 3331(a). This limitation on the Attorney General fully meets the test of an adequate standard, " . . . whether the definition sufficiently marks the field within which the Administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will." Yakus v. United States, 321 U.S. 414, 425, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944).

Assuming *arguendo* that the provision for calling special grand juries involves a classification which imposes a heavier burden upon witnesses who live in the three large urban areas, the classification is not unreasonable or arbitrary. Elaborate presentations of census statistics and analysis are not necessary to show that in absolute terms the amount of crime in these cities will be greater than in other areas even if the rate of crime might be lower. Consequently, the pernicious effects which Congress found to flow from organized crime would be greater. *See* Pub.L.No. 91–452, § 1 (October 15, 1970) (Organ-ized Crime Control Act of 1970). Thus, a Congressional determination that a special grand jury would be necessary at least once every eighteen months in these areas is rational and reasonable and is in no way arbitrary or invidious discrimination.

## PUNISHMENT

Relators next contend that as they have already been confined for more than fourteen months, further confinement is not coercive but clearly punitive. There can be no question that the grant of immunity, to the relators and the order to them to testify were valid. *See* Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). If witnesses could refuse to testify with impunity, grand juries and the courts could be rendered impotent. Therefore, when a court is faced with "a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance." Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). " . . . [T]hat the length of imprisonment thus depends upon fortuitous circumstances, such as the life of the grand jury and when a witness appears, has no relevance . . . ." because of the conditional and civil nature of the imprisonment. *Id.* at 372, 86 S.Ct. at 1536. Relators' argument to the contrary is based upon inapposite authorities cited out of context and is not worthy of discussion.

## STATUTORY CONSTRUCTION

The relators' final contention apparently is that 18 U.S.C. § 3331 cannot be used to extend the term of the special grand jury, and therefore their civil contempt incarceration under 18 U.S.C. § 2514, because § 3331 was designed to implement 18 U.S.C. § 6002, the new use immunity statute. Both § 3331 and § 6002 were created by the Organized Crime Control Act of 1970 which also postponed the repeal of § 2514 for four years. Relators' earlier contention that the two immunity statutes are incon-

sistent was specifically denied by the Court of Appeals. In re Womack, Order No. 71–1408 (7th Cir. June 17, 1971). There is thus no reason why the incarceration of a witness granted immunity under the old statute may not continue for the life of the grand jury just as it would so continue under the new statute.

It is therefore ordered that the petition for a writ of habeas corpus be, and it is hereby dismissed.