**UNITED STATES of America,
Plaintiff,**

v.

**Billy Joe HANDLEY, Defendant.**

**No. H Cr 75–208.**

United States District Court,
N. D. Indiana,
Hammond Division.

Feb. 4, 1976.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for plaintiff.

Joseph Van Bokkelen, Hammond, Ind., for defendant.

## OPINION AND ORDER

ALLEN SHARP, District Judge.

On September 30, 1975 a Special Grand Jury was empaneled pursuant to the order of this Court en banc upon the written request of Assistant Attorney General Richard L. Thornburgh, head of the Criminal Division for the Department of Justice. The order empaneling said Special Grand Jury is as follows:

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF INDIANA

IN THE MATTER OF
THE CONVENING OF
A SPECIAL GRAND
JURY FOR THE
NORTHERN DISTRICT
OF INDIANA.

## ORDER FOR CONVENING A SPECIAL GRAND JURY

Assistant Attorney General Richard L. Thornburgh, United States Department of Justice, having certified in writing to this court that in his judgment a special grand jury is necessary because of criminal activity in the Northern District of Indiana, and having requested that the special grand jury be summoned at the earliest possible date, and there being no other special grand jury (pursuant to Title 18, Section 3331) now serving,

IT IS THEREFORE ORDERED that the Jury Commissioner in each place of holding court shall immediately draw the names of the designated number of prospective grand jurors listed below from the Qualified Jury Wheel of the respective Division therein:

HAMMOND DIVISION ...................... 21
FORT WAYNE DIVISION ................... 21
SOUTH BEND DIVISION ................... 25
HAMMOND DIVISION AT LAFAYETTE ........ 8

Thereafter, the Clerk, or his Deputy, and the Jury Commissioner of the Hammond Division, shall cause the names so drawn to be pooled to make up the grand jury array, and shall issue a summons to each of said persons to appear in the United States Courtroom at Hammond, Indiana, on Tuesday, September 30, 1975, at 10:00 A.M. (prevailing Hammond time), to serve as grand jurors for a term of eighteen months or until discharged pursuant to Title 18, Section 3331.

(s) Jesse E. Eschbach
Chief Judge

(s) Allen Sharp
Judge

(s) Robert A. Grant
Judge
ENTER: 8/29/75

On December 8, 1975 an indictment was returned in open court by the Special Grand Jury charging the defendant, Billy Joe Handley, together with six co-defendants in a twenty count indictment charging violations of Section 2314, Title 18 of the United States Code, i. e., the interstate transportation of forged securities.

The empanelment of a Special Grand Jury pursuant to Section 3331, Title 18 of the United States Code, had been re-

quested by the office of the United States Attorney for the Northern District of Indiana to aid in the investigation and prosecution of pervasive organized criminal activity, racketeering and political corruption in Lake County, Indiana. The Government concedes that neither the defendant Handley nor any of his co-defendants were targets of the Special Grand Jury investigation at the time of its empanelment. The Government further concedes that the defendant Handley was not a specific object of its efforts to gain a Special Grand Jury in this District, nor was he a target of the Strike Force Attorney, who have been assisting the office of the United States Attorney in its investigation to date.

The indictment in the instant case was a superseding one, replacing a single-count information under Hammond Criminal No. H Cr 75–195, which was scheduled for trial for December 10, 1975. Counsel for the defendant was made aware of the Government's intention to seek a twenty count indictment; defense counsel had previously indicated, in fact, that the defendant would not waive his constitutional right to presentment to a grand jury. While it is true as the defendant asserts that a regular grand jury empaneled pursuant to Rule 6 of the Federal Rules of Criminal Procedure was then empaneled and sitting in the Hammond Division, it was not available for presentment of indictments at the time the instant case was presented to the Special Grand Jury on December 7, 1975. The regular Grand Jury which was drawn from the area in the entire Northern District of Indiana had met prior to the date of this indictment on November 12 through 14, 1975. While it had been scheduled originally to meet on December 2, 3 and 4, its session had been cancelled because of the inability of the United States Attorney's office to adequately prepare sufficient cases for its review and consideration because of the overburdening workload upon the small staff in the North District of Indiana. (The office of the United States Attorney has a staff of eight Assistant United States Attorneys in the three Federal Court buildings in the Northern District and handles in excess of four hundred criminal cases each year; the United States Attorney for the Northern District of Illinois has a staff of seventy-four Assistant United States Attorneys, plus an undetermined number of paralegal assistants primarily staffing the offices in Chicago, and handles slightly more than eight hundred criminal cases each year.) The regular Grand Jury did not reconvene for its final session until the 19th of January, 1976. The Government contends in order to avoid successive prosecutions for offenses of the same character constituting part of a common scheme and plan which could otherwise be joined under Rule 8 of the Federal Rules of Criminal Procedure, it was necessary to present the indictment to the only Grand Jury then sitting for business.

The argument of the defendant, Handley, appears to be a twofold one: first, that the Special Grand Jury was without jurisdiction to investigate and return indictments for offenses not connected with organized crime or political corruption; secondly, that the defendant, Handley, could not be a target of the Special Grand Jury without some showing that he was an expressed target of the United States Attorney's Office when it sought empanelment of the Special Grand Jury. This attack upon the Special Grand Jury appears unique and one of first impression, but is merely a continuation of the attacks upon a Special Grand Jury constituted under 18 U.S.C., § 3331. See, e. g. *Wax v. Motley,* 510 F.2d 318 (2d Cir. 1975) (rejecting a claim that the Special Grand Jury was only a regular Grand Jury); *United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974) (rejecting a challenge to the number of Special Grand Juries empaneled); *Korman v. United States,* 486 F.2d 926 (7th Cir. 1973) (determining the extension of the term of a Special Grand Jury not reviewable); *United States ex rel. Womack v. United States Attorney for*

*the Northern District of Illinois,* 348 F.Supp. 1331 (N.D.Ill.1972) (rejecting a constitutional challenge to the authority of a Special Grand Jury on grounds of equal protection); *In re Lopreato,* 511 F.2d 1150 (1st Cir. 1975) (challenge of subpoena to "target" of Special Grand Jury); *In re Report and Recommendation of June 5, 1972 Grand Jury,* 370 F.Supp. 1219 (D.C.C.1974) (Sirica, C. J.) (issuance of Special Grand Jury Report); *In re Reno,* 331 F.Supp. 507 (E.D.Mich. 1971) (rejection of objections to immunity grant for Special Grand Jury). The Government on the other hand has attempted to invoke the provisions of 18 U.S.C. § 3331 et seq., to validate the actions of regular Grand Juries whose powers have lapsed by the passing of time. See, e. g., *United States v. Fein,* 370 F.Supp. 466 (E.D.N.Y.1974) aff'd, 504 F.2d 1170 (2d Cir. 1974); *United States v. Gurney,* 393 F.Supp. 688 (M.D.Fla. 1974).

A Special Grand Jury was the creation of a Congress interested in new weapons to combat organized crime and was endowed with certain unique powers to effect that end. Under Section 3331(b) a Special Grand Jury can apply on its own for an extension of its term and may continue to act while the application is pending before the Court; pursuant to Section 3333, the Special Grand Jury can submit reports in matters not resulting in indictments. However, there is nothing in the statute or the legislative history concerning the Organized Crime Act of 1970 placing any restriction or limit upon the powers of a Special Grand Jury to function.

Both the order empaneling the Special Grand Jury and the statute upon which it was based establish a broad and general mandate to the Grand Jury for criminal investigation. The order provides that a Special Grand Jury was necessary because of criminal activity in the Northern District of Indiana; Section 3332(a) sets forth the following directive:

"It shall be the duty of each such grand jury impaneled within any judicial district *to inquire into offenses against the criminal laws of the United States* alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence." (my emphasis)

Moreover, the legislative history supports a concept of the Special Grand jury with broad general powers:

"The purpose of these provisions (18 U.S.C. § 3331(a) et seq.) is to make available a sufficient number of grand juries in each judicial district to accommodate *the general needs of the district and the special needs of the typically lengthy organized crime case.* They are in accord with a recommendation of the President's Commission on Law Enforcement and Administration of Justice which recommended that at least one investigative grand jury be impaneled annually in each jurisdiction that has major organized crime activity." (my emphasis)

House Report No. 91–1549 on the Organized Crime Control Act of 1970, reprinted in 2 U.S.Code Congressional and Administrative News, pp. 4007, 4014 (West Publishing Co. 1970)

The defendant, Handley, claims some support in the language quoted in the Court opinion in *Fein,* supra. However, a reading of that opinion clearly indicates that the language relied upon was in dicta not responsive to any issue raised or argued by either party and thus not an inference desired or intended by the Court. However, in *United States v. Chiarizio,* 388 F.Supp. 858 at 865 (1975), the District Court for Connecticut inferred that the powers of a Rule 6 Grand Jury and a § 3331 Special Grand Jury are coextensive in the following language rejecting an attack upon an indictment returned by a Special Grand Jury because of claimed procedural "irregularities" at the time of its empanelment:

"Even assuming, however, that it was necessary to inform the grand jury of Assistant Attorney General Peterson's letter and of its power to issue reports pursuant to § 3333(a), it does not follow that the indictments returned by the grand jury impaneled on October 10, 1973 are void. That grand jury would still have been validly convened pursuant to Fed.R.Crim.P. 6(a) and (g), and thus would have the same powers as a special grand jury to return an indictment alleging violations of 18 U.S.C. §§ 1955 and 371.

\* \* \* \* \* \*

The indictment returned by the grand jury and the circumstances under which it was returned fully comport with the powers of a regular grand jury under Fed.R.Crim.P. 6(a) and (g). Special grand jury or not, the indictment in this case is valid."

Id., at 865–866.

Although this kind of attack upon the powers · of a Special Grand Jury is unique, a comparable argument has been rejected by a majority of the Courts, including the Seventh Circuit, upon the powers of a special attorney for the Department of Justice. In *United States v. Weiner,* 392 F.Supp. 81 (N.D.Ill. 1975) approved and followed in *Infelice v. United States,* 18 Cr.Law Rep. 2338, 528 F.2d 204 (7th Cir. 1975), rejected an attack upon an indictment based upon the appearance of an "unauthorized" person before the Grand Jury. See, also, *United States v. Wrigley,* 520 F.2d 362 (8th Cir. 1975), endorsing the decision in *Weiner,* supra.

On the basis of the foregoing, it is clear that the statute language, its legislative history and analogist case law clearly supports a broad and general view of the power of the Special Grand Jury to investigate general criminal activity and return the indictment in the instant case. Moreover, any objection based upon a claim that the defendant must have been an objective or "target" of the United States Attorney seeking the empanelment of a Special Grand Jury must likewise fall. Not only would the foregoing authorities reject such a claim such a position if adopted would result in an unfortunate precedent.

If the position of the defendant, Handley, were to be sustained, the result would be a never ending examination upon demand by defendants of indictments returned or reports issued by a Special Grand Jury. As the Supreme Court held in *United States v. Dionisio,* 410 U.S. 1 at 17, 93 S.Ct. 764 at 773, 35 L.Ed.2d 67 (1973):

"Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws."

It makes no difference in the instant case that the Government concedes the defendant, Handley, was not within the purview of the original scope of the Special Grand Jury. Any precedent requiring the Government to show a particular defendant to have been a target before indictment would be absurd; any requirement that a particular defendant fall within a given class would be beyond human ability. The term "organized crime" is in itself vague, general and difficult to define. See, for example, *Catalano v. United States,* 383 F.Supp. 346 (D.C.1974), which attempted the following definition:

"A structured criminal syndicate composed of professional criminals who primarily rely on unlawful activity as a way of life."

Most assuredly any requirement that any target or subject matter of investigation by a Special Grand Jury be tested to fit within that definition, or any other definition, that might be devised, would certainly fall within the proscription stated by the United States Supreme Court in *Dionisio,* supra. This Special Grand Jury is made up of citizens drawn from the entire geographical area of this district and selected under the same procedures as a regular Grand Jury. The minimum and maximum number of grand jurors is

the same for this Special Grand Jury as for a regular Grand Jury. The members of this Special Grand Jury took the same oath as a regular Grand Jury. In sum, as far as this defendant is concerned there were no differences and no prejudice. This defendant stands in precisely the same position as if he had been indicted by a regular Grand Jury.

On the basis of the foregoing, the motion of the defendant, Handley, is in all things denied.