**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas J. KOLIBOSKI, Defendant-Appellant.**

No. 83–1634.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1984.

Decided April 24, 1984.

Thomas J. Koliboski, pro se.

Thomas J. Scorza, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

BAUER, Circuit Judge.

Defendant Thomas J. Koliboski was convicted of six counts of willful failure to file income tax returns for calendar years 1980 and 1981 and filing four false W-4 statements in 1980, 1981, and 1982. The court sentenced the defendant on count one to six months in a work release program, and five years of probation in lieu of imprisonment on the remaining counts. We affirm the judgments of conviction.

On appeal, the defendant argues principally that the district court did not have subject matter jurisdiction over the charges against him on the ground that Title 26 of the United States Code is not encompassed by the 18 U.S.C. § 3231 (1948) grant of jurisdiction to district courts.[1] Courts too numerous to enumerate have rejected this silly claim, and we now specifically reject it. *E.g.*, *United States v. Drefke*, 707 F.2d 978 (8th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 434, 78 L.Ed.2d 321 (1983). Section 3231 vests in the district courts original jurisdiction over "all offenses against the laws of the United States." Sections 7201 through 7210 of Title 26 were enacted pursuant to the power granted Congress by article 1, section 8 of and the sixteenth amendment

---

1. Although not raised in his brief on appeal, the defendant's entire case at trial rested on his claim that he in good faith believed that wages are not income for taxation purposes. Whatever his mental state, he, of course, was wrong, as all of us already are aware. Nonetheless, the defendant still insists that no case holds that wages are income. Let us now put that to rest: WAGES ARE INCOME. Any reading of tax cases by would-be tax protesters now should preclude a claim of good-faith belief that wages—or salaries—are not taxable.

to the United States Constitution. Title 26 thus defines laws of the United States, suits for violations of which clearly fall within federal district court jurisdiction under Section 3231. *See* 1 U.S.C. § 112 (1951); *United States v. Eilertson,* 707 F.2d 108 (4th Cir.1983).

Second, the defendant argues that the special grand jury in this case exceeded its statutory authority when it indicted him on December 13, 1982. The defendant contends that a special grand jury summoned pursuant to Section 3331 of Title 18 instead of Rule 6, Fed.R.Crim.P. 6, only can investigate organized crime activities, which are not involved in his case.

■ Special grand juries have broad investigative powers. Section 3332(a) directs these grand juries to "inquire into offenses against the criminal laws of the United States alleged to have been committed within that district." 18 U.S.C. § 3332 (1970). The legislative history confirms the breadth of the general mandate bestowed by this section. These grand juries are not restricted to investigating only organized crime activities. "The purpose of these provisions is to make available a sufficient number of grand juries in each judicial district to accommodate the general needs of the district and the special needs of the typically lengthy organized crime case." H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 39, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4007, 4014, *quoted in United States v. Handley,* 407 F.Supp. 911, 914 (N.D.Ind.1976). General needs of a district include investigation into all types of criminal activities. The special grand jury here thus had authority to indict the defendant. This position is consistent with *United State v. Fein,* 504 F.2d 1170 (2d Cir.1974), which noted that special grand juries conduct investigations similar to Rule 6 grand juries. *Id.* at 1179–80.

Third, in his pretrial instructions to the jury, the district judge briefly traced for the jurors the history of trials by jury. The judge began with the trial of Socrates in the fourth century before Christ, and then highlighted the evolution of modern due process, beginning with the sealing of the Magna Charta by King John on June 15, 1215. During his remarks, the judge said, "The Japanese have never used juries ... they say 'We think our system of justice is better ....'" The judge concluded by admonishing the jurors that they "also carry a significant responsibility so far as the whole concept of justice is concerned.... And so far as trial by jury is concerned, we are dedicated to a system of justice."

■ The defendant claims that the judge's remarks "overwhelmingly prejudiced" the jury against him. We disagree. Although the judge's remarks may not have been directly pertinent to the issues in the case, they were not individually or collectively prejudicial to the defendant. The remarks dealt only with the role of juries; and the judge took care to emphasize the great responsibility in jurors to do justice. The remarks were, moreover, rather historically interesting and even educational.

■ In addition to his remarks to the jury, the district judge took an active role in the trial itself. He occasionally questioned the defendant and other defense witnesses, and he engaged in colloquies with the lawyers on both sides. The defendant vigorously argues that the judge's interruptions constituted prejudice requiring reversal. Our review of the entire 499 pages of trial transcripts reveals that in almost every instance the judge intervened only after the defendant attempted to confuse factual and legal issues and stray from relevant concerns to immaterial issues. *See, e.g.,* Trial tr. at 148–58, 168–70 (direct examination of defense witness). Although we do not encourage overactive participation by a trial judge, we find here that each of the judge's comments and questions individually was not prejudicial to the defendant. The judge's interventions at most may have indicated to the jury that the defendant was attempting to establish facts irrelevant to the issues. Such knowledge, if the jury gained it, does not constitute prejudice against positions the defendant properly established. *Accord United States v. Briggs,* 700 F.2d 408, 414–15 (7th Cir.), *cert. denied,* —— U.S.

——, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983).

Next, the defendant raises two issues concerning the composition of the jury that heard his case. First, the defendant contends that drawing potential jurors from voter registration lists is improper. In *United States v. Gometz*, 730 F.2d 475 at 479–480 (7th Cir.1984) (*en banc*), we approved such a practice as a legitimate method for selecting potential jurors.

Second, the defendant contends that he was improperly denied his right to examine jury records. Criminal defendants have the unqualified right to inspect jury lists. 28 U.S.C. § 1867(f) (1968); *Test v. United States*, 420 U.S. 28, 30, 95 S.Ct. 749, 750, 42 L.Ed.2d 786 (1975). The district judge recognized that right and offered to make the records available to the defendant. Transcript of proceedings, February 24, 1983, at 4–6. The judge, however, denied the defendant's written motion for a stay or dismissal of the proceedings which claimed that persons with Spanish surnames were excluded from jury lists. Nothing in Section 1867, *Test*, or any other case requires a court to stay a proceeding in the absence of any showing that there was substantial failure to comply with the provisions of the Jury Selection and Service Act. The defendant made no such showing. Instead, the written motion merely requested more time for review of available jury records, even though the defendant's lawyer already had taken more than a week to review the records. Moreover, the defendant's oral request for an extension indicated that he needed more time to prepare witnesses, a request that he had made before. Transcript of proceedings, February 24, 1983, at 6. The judge did not err in denying the motion for a stay and the request for an extension.

Finally, the defendant argues that the jury was not instructed properly on the requirement that the defendant's illegal actions must have been willful. The court instructed the jury that willful means "a voluntary, intentional violation of a known legal obligation," an instruction that we approved in *United States v. Moore*, 627 F.2d 830, 833 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), and one that comports with the Supreme Court's view. *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976).[2] The defendant's argument thus fails. His other claims regarding the instructions either have been discussed in previous decisions of this court or have no merit. We have considered each issue and determined that the district court acted properly in each instance.

AFFIRMED.

---

**2.** The defendant's lawyer misrepresented the meaning of *Pomponio* and other Supreme Court authority during oral argument, stating that those cases require "bad purpose" language in an instruction defining willful. Those cases clearly reject such a requirement. *See United States v. Couming*, 445 F.2d 555, 557 (1st Cir.),

*cert. denied*, 404 U.S. 949, 92 S.Ct. 291, 30 L.Ed.2d 266 (1971) ("willful" has no "talismanic characteristics"; "if it was shown that [the defendant] knew the requirements of the law and deliberately refrained from complying, then he had the 'bad purpose' of specifically intending to violate the law.").