108 F.3d 1380
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert E. BARRETT, Defendant-Appellant.
 Nos. 95-3680, 96-3699.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 18, 1997.*
Decided March 20, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Robert Barrett was charged with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). He was released on conditions and subsequently pleaded not guilty. On January 20, 1993, the date set for hearing a motion by Barrett for leave to represent himself, Barrett did not appear. The court reset the hearing and, when Barrett again failed to appear on February 3, 1993, issued a warrant for his arrest. Nearly two years later, in December of 1994, Barrett was arrested. In June of 1995, a jury convicted Barrett of unlawful possession of a firearm as charged, and the following month he was convicted under 18 U.S.C. § 3146 for failure to appear before the court as required by the conditions of his release. In his appeal to this court, Barrett raises nine issues. For the reasons set forth below, we affirm.
 
 Jurisdiction
 
 2
 Barrett contends that the district court did not have personal or subject matter jurisdiction in either the firearm or the failure-to-appear action against him. Barrett did not raise the issue of personal jurisdiction until now, and therefore it is waived. Giotis v. Apollo of the Ozarks, Inc., 800 F.2d 660, 663 (7th Cir.1986). Subject matter jurisdiction, however, may be raised at any time. Insurance Corp. of Ireland v. Compagnie des Bauxites, 456 U.S. 694, 702 (1982), cited in United States v. Stillwell, 900 F.2d 1104, 1110, n. 2 (7th Cir.1990); United Steelworkers of America v. Libby, 895 F.2d 421, 423 (7th Cir.1990). Nevertheless, Barrett's jurisdictional arguments are meritless.
 
 
 3
 His claim to be a citizen of Indiana but not of the United States is patently without merit. Challenges to federal territorial jurisdiction are frivolous. United States v. Jones, 983 F.2d 1425, 1428 (7th Cir.1993). Moreover, Barrett's claim that 18 U.S.C. § 3231 vests jurisdiction in the "district courts of the United States" and not the "United States Districts Courts" is patently meritless. It is well-settled that 18 U.S.C. § 3231 vests original jurisdiction in the district courts over all offenses against the laws of the United States, including 26 U.S.C. § 5861, under which Barrett was convicted. See United States v. Koliboski, 732 F.2d 1328, 1329 (7th Cir.1984).
 
 
 4
 Pre-Trial Detention at the Allen County Jail
 
 
 5
 Barrett claims that his pre-trial detention at the Allen County Jail constituted a denial of due process and an Eighth Amendment violation. He claims that the crowded and noisy conditions, and the lack of access to a law library, deprived him of sleep and disrupted his preparation for trial. Barrett further claims that such a pre-trial environment is the government's intentional implementation of unfair prosecutorial advantage. Barrett overlooks, however, that he was only at the Allen County Jail for just a few days. Moreover, Barrett expressly agreed, at the hearing to address his concerns about the conditions at the Allen County Jail, that just a few days there would be tolerable. Tr. 6/8/95 at 4-6. Before he was brought to the Allen County Jail to await trial, Barrett was incarcerated for approximately two months at the Metropolitan Correctional Center (MCC). Tr. 6/26/95 at 28-29. Barrett does not dispute that the conditions at the MCC, during the two months he resided therein prior to being transported to the Allen County Jail for trial, were amenable to preparing for trial. Accordingly, any inconveniences endured at the Allen County Jail are insignificant as they relate to Barrett's ability to prepare for trial; he had plenty of time for trial preparation while incarcerated at the MCC.
 
 
 6
 Far from constituting a due process violation, the pre-trial conditions experienced by Barrett at the Allen County Jail simply constitute a de minimis burden occasioned by the administrative necessity of transporting him for trial. Moreover, none of the conditions Barrett alleged rise to the level of a constitutional deprivation, especially in light of the temporary duration of his stay at the Allen County Jail. See generally Estate of Cole v. Fromm, 94 F.3d 254, 259 n. 1 (7th Cir.1996) (pre-trial detainees are entitled to at least the same level of protection against cruel and unusual punishment afforded to prisoners by the Eighth Amendment).
 
 Speedy Trial
 
 7
 Barrett's second argument is that he was denied a speedy trial in violation of the Speedy Trial Act. Barrett has not alleged with sufficient particularity exactly what he deems is wrong with the district court's calculation of excludable days under the Speedy Trial Act. Although we construe materials submitted by pro se litigants liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972), nevertheless a general reference to an allegedly unauthorized exclusion without argument as to how or why the exclusion is unauthorized is not an operable basis for appellate review. See Sanchez v. Miller, 792 F.2d 694, 703 (7th Cir.1986). Since no error, abuse of discretion, or prejudice to Barrett is readily apparent from the district court's calculation, we need address this claim no further. United States v. Ruth, 65 F.3d 599, 605 (7th Cir.1995).
 
 Double Jeopardy
 
 8
 Next, Barrett contends that the revocation of his bond for failure to appear and his criminal conviction for the same conduct constitute double jeopardy in violation of the Fifth Amendment. Barrett's conditional release was revoked because the government proved by clear and convincing evidence that he violated one of the conditions, i.e., that he appear in court as scheduled. 18 U.S.C. § 3148. The revocation of the release was not punishment for a crime. By contrast, the sentence of 12 months incarceration for his failure to appear, proved beyond a reasonable doubt, was punishment for a crime. 18 U.S.C. § 3146. The district court's analogy to revocation of parole was on point. See United States v. Hanahan, 798 F.2d 187, 189 (7th Cir.1989) (parole revocation for possessing a firearm and subsequent criminal prosecution for illegal possession of a firearm does not constitute double jeopardy); see also United States v. Wyatt, 102 F.3d 241, 244-45 (7th Cir.1996) (revocation of supervised release).
 
 
 9
 Congress' Authority to Enact 26 U.S.C. § 5861
 
 
 10
 Barrett's fourth contention is that Congress did not have the authority to enact 26 U.S.C. § 5861(d) because it is a taxing statute which infringes on the Second Amendment right to bear arms. As the district court noted in denying Barrett's motion to dismiss, however, the Supreme Court held many years ago that Congress is vested with the authority to enact the National Firearms Act under the power to tax. Sonzinsky v. United States, 300 U.S. 506 (1937). Barrett has not raised any challenge to Sonzinsky.
 
 Fifth Amendment
 
 11
 Barrett also claims that the firearms registration requirement under § 5861 violates the self-incrimination provision of the Fifth Amendment. That claim is foreclosed by the Supreme Court's decision in United States v. Freed, 401 U.S. 601 (1971). In Freed, the Court held that the National Firearms Act, as amended to specifically provide that information gained through the registration process could not be used against the applicant in criminal proceedings, does not violate the Fifth Amendment. Id. at 605.
 
 
 12
 Similarly, Barrett also insists for the first time that the registration requirements of the National Firearms Act do not apply to him because he is not a dealer or manufacturer of firearms. Our standard of review of forfeited challenges is plain error, and we will reverse only to avoid a miscarriage of justice. United States v. Olano, 507 U.S. 725, 733-34 (1993); United States v. Valencia, 907 F.2d 671, 685 (7th Cir.1990). Contrary to Barrett's assertion, the National Firearms Act is not limited to dealers or manufacturers of firearms; § 5861(d) specifically applies to "any person" who receives or possesses an unregistered firearm. 26 U.S.C. § 5861(d).
 
 
 13
 Acceptance of Responsibility Sentencing Determination
 
 
 14
 Barrett's next argument is that the district court erred in failing to grant him a reduction in his sentence for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines.[1] U.S.S.G. § 3E1.1. He raises this claim for the first time on appeal; accordingly, we review for plain error. Olano, 507 U.S. at 733-34. Barrett maintains that he has never denied the essential elements of the crime as charged, and that his sole challenge has been to the constitutionality of the statute. However, there is nothing in the record to suggest that the district court erred in denying the reduction, especially in light of the fact that Barrett's nonappearance enabled him to successfully avoid prosecution on the firearm offense for nearly two years. See United States v. Delgado, 936 F.2d 303, 308 (7th Cir.1991) (conduct resulting in an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct).
 
 Grand Jury and Prosecutorial Impropriety
 
 15
 Barrett contends that his indictment was not properly returned by the grand jury in open court as required by Federal Rule of Criminal Procedure 6(f). Specifically, Barrett claims that the indictment is a fabrication of the prosecutor, that the grand jury was not in session at the time the indictment was considered, that no transcript was ever made of the hearing, and that there are no grand jury records to prove that there was a proper quorum of jurors. The district court determined, and we agree, that the indictment is valid on its face. It is signed by the foreperson and the assistant United States Attorney, and was filed in open court. Moreover, Barrett has not presented any specific facts to rebut the validity of the indictment and has failed to demonstrate a compelling or particularized need to examine the transcripts of the grand jury proceedings. See United States v. Lisinski, 728 F.2d 887 (7th Cir.1984); Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 222-23 (1979).
 
 Fourth Amendment
 
 16
 Law enforcement was tipped off that there were large marijuana plants growing in Barrett's fenced-in backyard. An officer asked for and received permission from Barrett's neighbor to climb a ladder leaned against a tree in the neighbor's backyard. From that vantage point, approximately ten feet above the ground, the officer observed the marijuana plants in Barrett's yard. A search warrant was subsequently obtained and the search of Barrett's property revealed a variety of evidence of marijuana cultivation. The firearm was also discovered during the search.
 
 
 17
 Barrett contends that the firearm should not have been admitted into evidence because the search warrant was based on information obtained from a prior illegal warrantless search. Barrett argues that the officer's observation of the plants in Barrett's backyard could not corroborate the informant because the officer's viewing violated Barrett's reasonable, subjective expectation of privacy. Barrett also claims that the search exceeded the scope of the warrant.
 
 
 18
 It is well-settled that a private backyard is not constitutionally protected from all view. As long as a member of the public has legal access to the view, such as from the vantage point of a passing aircraft or atop a telephone pole, law enforcement may also rely on observations made from that view. See Florida v. Riley, 488 U.S. 445, 448-50 (1989) (a view into a greenhouse from a police helicopter is not prohibited by the Fourth Amendment); California v. Ciraolo, 476 U.S. 207, 211-14 (1986). The officer who climbed the tree of Barrett's neighbor did so with the neighbor's consent, and was therefore entitled to glimpse the contents of Barrett's yard. The search warrant was lawful.
 
 
 19
 Barrett further contends that the officers could only search places on his property that might actually contain large marijuana plants, and that because the firearm was found in a small compartment it lies necessarily outside of the "plain-view" doctrine. The "plain-view" exception provides that incriminating evidence not anticipated by the warrant is admissible as long as the following three conditions are satisfied: (1) "the officer [seizing the evidence] did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;" (2) the evidence was in plain view; and (3) the "incriminating character [of the evidence was] immediately apparent." Horton v. California, 496 U.S. 128, 136-37 (1990).
 
 
 20
 The only element at issue is whether or not the firearm was in plain view. The discovery of the firearm was in a small open compartment around which evidence of marijuana cultivation was observed in plain view.[2] In any event, the search of smaller places was entirely appropriate because the marijuana cultivation paraphernalia initially observed in plain view suggested the likelihood of concealed small marijuana plants. Moreover, the warrant specified that the scope of the search included marijuana plants, and did not limit the search to only large marijuana plants. The officers were legitimately searching an area of shelving and smaller open compartments for marijuana, and the sawed-off shotgun was in plain view in that area. Accordingly, discovery of the firearm did not violate the Fourth Amendment.
 
 
 21
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 A two-level reduction in offense level is mandated if the defendant "clearly demonstrates acceptance of responsibility." U.S.S.G. § 3E1.1(a). Another one-level reduction applies if, before the § 3E1.1(a) two-level reduction, the offense level was 16 or greater and if the defendant cooperated with the government in his own prosecution by either "timely providing complete information to the government concerning his involvement in the offense; or ... timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b)
 
 
 [2]
 Upon entering the property the officers conducting the search observed fluorescent growing lights, large buckets and small cups with potting soil, stacks of the little cups, marijuana seeds, marijuana cigarettes, marijuana leaves, marijuana cultivation manuals, fertilizer, a scale, and plastic bags. The firearm was visible among these items, in a small open closet