**In re Jack KORMAN,**
**and**
**Robert W. Likas, Witnesses,**
**Before the Special February 1971**
**Grand Jury.**

**No. 71 GJ 600.**

United States District Court,
N. D. Illinois, E. D.

Aug. 17, 1972.

Anna R. Lavin, George F. Callaghan, Edward J. Calihan, Jr., Chicago, Ill.

James R. Thompson, U. S. Atty., N. D. Ill., Chicago, Ill.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This Motion for Production of Reports of Electronic Surveillance comes before me today as an emergency matter which demands that it be decided under the most expeditious of circumstances.

Movants ask that the Government be required to disclose reports and tran-

scripts of any electronic or mechanical surveillance obtained as to them maintaining that Grand Jury witnesses are entitled to invoke the statutory prohibition against use before the Grand Jury of evidence derived from interception of any wire or oral communications. In re Egan, 3 Cir., 450 F.2d 199; In re Evans, 146 U.S.App.D.C. 310, 452 F.2d 1239 (affirmed sub nom Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179.)

Movants made inquiry of the Solicitor General as to whether there had been electronic or mechanical surveillance in this case. Movants' Exhibits 1 and 2 are the Letters to the Solicitor General and the Acting Solicitor General's reply in which he states that:

"Since, unlike the situation in Egan, no claim was raised in the district court in this case that electronic surveillance justified the respondent's refusal to testify before the grand jury, and since that issue is not before the Supreme Court, there is no occasion for the government to make any inquiry respecting such surveillance. I therefore cannot accede to your request."

Movants assert "that forthright acknowledgment or denial of such inquiry has been the practice" and in light of the Acting Solicitor General's response the movants reasonably believe they have, in fact been subjected to electronic or mechanical surveillance.

They believe that the questions asked of them before the Special February 1971 Grand Jury were based upon information overheard from them by means of the Government's illegal wiretapping and electronic surveillance.

Movants claim the protection and invoke the prohibition upon such use as defined in Title 18, U.S.C., Sections 2515 [1] and 3504 [2] (part of) and contend that if they are required to testify in order to purge themselves of the contempt citation it would be violative of Sections 2515 and 3504.

They, therefore, ask that this Court stay the mittimus herein, pending their obtaining the necessary information from the Government and a hearing thereon.

The Government's Response to this Motion is a copy of a letter dated August 7, 1972 from the Department of Justice addressed to Mr. Sheldon Davidson, the Attorney in Charge of the Chicago Strike Force, and is in response to a request by Mr. Davidson for ascertainment of whether the movants were monitored by electronic surveillance. That letter states in part:

"A review of the Department of Justice files discloses no information indicating that conversations of Rob-

---

[1]. Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

[2]. (a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act; (2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility.

ert W. Likas and Jack Korman were at any time overheard by electronic surveillance or that premises known to be owned, leased, or licensed by them were covered by electronic surveillance by the Federal Bureau of Investigation.

"The Internal Revenue Service did utilize pen register surveillance from February 8 to May 22, 1963, of telephone numbers 423–7800, 423–7801, and 423–7802. These telephones were listed at 9530 South Merrimac, Columbia, Illinois, a suspected wire room operated by Robert Likas. Mr. Likas has not been the subject of any other electronic surveillance conducted by the Internal Revenue Service. No conversations in which he participated have been intercepted, overheard or recorded by the Internal Revenue Service. The original pen register tapes of this surveillance are not available, but the transcripts of the pen register tapes can be made available to you, if needed. * * *

"On October 20, 1961, an Inspector listened by an extension telephone to a conversation between P. Stollman and an individual identified as Jack Korman. This call was monitored at Stollman's office, 22100 Greenfield, Detroit, with Stollman's consent. On October 18, 1961, a telephone conversation between P. Stollman and Jack Korman was also monitored by an Inspector at Stollman's office, with Stollman's consent. Nothing significant developed from these conversations and the Internal Revenue Service case was closed. Mr. Korman has not been the subject of any other electronic surveillance conducted by the Internal Revenue Service, and no conversations in which he participated have been intercepted, overheard, or recorded by the Internal Revenue Service, other than the above-mentioned monitorings.

"The above-named individuals were never subjected to electronic surveillance by the United States Secret Service, the United States Postal Service, the Bureau of Alcohol, Tobacco and Firearms, or the Bureau of Narcotics and Dangerous Drugs."

Sincerely,
Henry E. Petersen
Assistant Attorney General
Criminal Division

By: (signature of William S. Lynch)
William S. Lynch
Chief, Organized Crime and
Racketeering Section

The Government in its oral argument asserted that the cases are clear that the use of a pen register does not constitute an "interception" within the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. 2510 et seq. The Legislative History of that Act, Senate Report No. 1097, paragraph (4) defines "intercept" and states that:

"The proposed legislation is not designed to prevent the tracing of phone calls. The use of a 'pen register' for example would be permissible. But see U. S. v. Dote, 371 F.2d 176 (7th 1966). The proposed legislation is intended to protect the privacy of the communication itself and not the means of communication." 1968 U.S. Code Cong. & Admin.News, p. 2178

That a "pen register" is not an "interception" under § 2510 and that the requirements of that statute do not apply statutorily to pen register was reiterated in United States v. Escandar, 319 F. Supp. 295 (S.D.Fla., 1970), reversed on other grounds and in United States v. Vega, 52 F.R.D. 503, 507 (E.D.N.Y. 1971).

Thus, since a "pen register" is not "interception" under the Act the complaint herein does not fall within § 2515 and movants have no standing under *Gelbard, supra,* because this case is outside the provisions of § 2510.

In oral argument movants' counsel alleged that the letter from the Department of Justice to Mr. Davidson denying electronic surveillance by the Government and admitting "pen register" surveillance is ambiguous and unclear.

I disagree and find, rather, that the letter is firm and unequivocal in its denial.

However, although the petition has not raised the question of the sufficiency of this type of response by the Government the matter causes me to pause on my own initiative to question whether or not the letter itself meets the test of fundamental fairness. The cases have not questioned it but rather seem to have read over it thereby allowing the presumption that they do hold that this form of response is a sufficient form of official denial to meet the classic test of fundamental fairness.

For example, in *Gelbard, supra,* Mr. Justice White in his concurring opinion stated:

> "Of course, where the Government officially denies the fact of electronic surveillance of the witness, the matter is at an end and the witness must answer."

It must be noted that this is not a statement relative to the sufficiency of the response involved though it refers to it as an official denial.

In In Re Womack and Robinson, 466 F. 2d 555 (C.A.7th 1972) the Government also filed a letter from the Assistant Attorney General which made certain representations concerning the lack of electronic surveillance. The Seventh Circuit held that:

> " . . . . the representations in this case by the Department of Justice that the privacy of neither realtor was subject to interference put "the matter . . . . at an end and the witness(es) must answer."

See Fraser v. United States, 452 F.2d 616 (7th Cir. 1971); United States v. Doe, 451 F.2d 466 (1st Cir. 1971).

Yet, it appears to me that there may be area for consideration by higher courts of whether or not the Supreme Court has, in fact, accepted the type of letter herein involved as sufficient official denial of wiretapping.

 Incisive characterization compels me to query whether or not such a letter in the form and manner in which it is submitted would in the opinion of the higher courts, were they clearly to address themselves to it, offend the traditional concept of the right of confrontation by the accused of his accuser. That right includes the right of cross-examination or the right to in some fashion go behind an ordinary letter. The right of confrontation seems yet in want of attention with relation to the sufficiency of the Government's check upon itself.

 However, out of an abundance of caution I shall accept the letter as sufficient even though it is over the typed name of an Assistant Attorney General and over the signature not of that individual, but of one of his Section Chiefs.

While accepting the letter it conceivably still may be asked whether it is such an independent observation as to rank as indisputable or whether it should not have been certified, verified under oath or at least be shown in some concrete fashion to be the product of independent review either by a disinterested third party within the Department or by an authentication which even though coming from within the Department establishes procedures from which the findings within the letter were arrived at.

This observation is under the circumstances beside the point and in view of my statement heretofore made relative to the issues that have been brought before me by the parties, I find that I should and I do hereby decline to grant the petition and it is so adjudged, ordered and decreed.