In the Matter of Jack KORMAN and Robert W. Likas, Witnesses before the Special February 1971 Grand Jury, Appellants,

v.

UNITED STATES of America, Appellee.

UNITED STATES ex rel. Jack KORMAN and Robert W. Likas, Petitioners-Appellants,

v.

The UNITED STATES ATTORNEY FOR the NORTHERN DISTRICT OF ILLINOIS and the United States Marshal for the Northern District of Illinois, Respondents-Appellees.

Nos. 72–1778, 72–1930.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1973.

Decided June 8, 1973.

2. See, Sorrells v. United States, 287 U.S. at 439, 451–452, 53 S.Ct. 210.

Anna R. Lavin, Chicago, Ill., for appellants.

James R. Thompson, U. S. Atty., William T. Huyck, James Murray, Asst. U. S. Attys., Chicago, Ill., for appellees.

Before Mr. Justice CLARK *, DUFFY, Senior Circuit Judge and KILEY, Circuit Judge.

DUFFY, Senior Circuit Judge.

There are two appeals before us for our consideration. These have been con-

---

* Associate Justice Tom C. Clark, Supreme Court of the United States, Retired, is sitting by designation.

solidated in this Court in order to expedite the appeal in each.

On April 20, 1971, appellants Korman and Likas were found to be in civil contempt of the Court by a District Judge under 28 U.S.C. § 1826(a) for refusing "without just cause shown to comply with an order of the court to testify" before the Special February 1971 Grand Jury convened in Chicago, Illinois. Initially, the appellants herein refused to testify asserting their Fifth Amendment privilege against self-incrimination. Each defendant was granted immunity pursuant to 18 U.S.C. § 6002. They remained silent contending that the use immunity conferred by the statute was inadequate to supplant their Fifth Amendment privileges.

An appeal was taken to this Court and we reversed the District Court, holding that only full transactional immunity is sufficient to supplant the privilege against self-incrimination. In Re Korman, 449 F.2d 32 (7 Cir., 1971). Thereafter, the Supreme Court granted certiorari and summarily reversed our Court's holding relying on Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).[1]

On July 17, 1972 the District Court extended the term of the Special February 1971 Grand Jury for a period of six months pursuant to the provisions of 18 U.S.C. § 3331(a).[2]

On August 15, 1972 while still free on bail during the pendency of the District Court's consideration of their contempt citations, motions were filed on behalf of the appellants declaring the necessity of a hearing in the District Court to determine whether they had been the subjects of illegal governmental electronic surveillance. In the "Motion for Production of Reports of Electronic Surveillance" and the "Motion to Stay Mittimus," the appellants (petitioners therein) alleged that because the Solicitor General had refused to answer their inquiries with respect to the utilization of electronic surveillance in gathering information for the Special February 1971 Grand Jury, they therefore had reason to believe that they had, in fact, been so subjected.[3]

On the same date the motions were filed and a hearing on the same held, the United States Department of Justice filed in District Court a letter dated August 7, 1972 from Henry E. Petersen, Assistant Attorney General, to Sheldon Davidson of the Chicago Strike Force denying that conversations of the appellants had been overheard by the Department of Justice by means of electronic surveillance. The letter disclosed that the Internal Revenue Service had utilized a pen register on the telephone of appellant Likas from February 8 to May 22, 1963, but no conversations were monitored at that time or any subsequent time. The letter mentioned conversations between one Phillip Stollman and an individual calling himself Jack

---

1. United States v. Korman, 406 U.S. 952, 92 S.Ct. 2055, 32 L.Ed.2d 340 (1972).

2. 18 U.S.C. § 3331(a) provides in pertinent part, ". . . The [Special] grand jury shall serve for a term of eighteen months unless an order for its discharge is entered earlier by the court upon a determination of the grand jury by majority vote that its business has been completed. If, at the end of such term or any extension thereof, the district court determines the business of the grand jury has not been completed, the court may enter an order extending such term for an additional period of six months. No special grand jury so extended shall exceed thirty-six months, except as pro-

vided in subsection (e) of section 3333 of this chapter."

3. In the Motion for Production of Reports of Electronic Surveillance the petitioners asserted on the authority of Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972) that as grand jury witnesses, they were entitled to invoke the statutory prohibition against use before the grand jury of evidence gleaned from interception of any wire or oral communications. In the Motion to Stay Mittimus the petitioners alleged they should remain at large until a hearing was held relying on In Re Egan, 450 F.2d 199 (3 Cir., 1971).

Korman overheard on an extension phone by an Internal Revenue Service agent in Stollman's office and, with Stollman's consent on October 18 and 20, 1961. With respect to both appellants, the letter indicated no further electronic surveillance or monitorings of their conversations had been conducted by the Internal Revenue Service.

The letter concluded with a statement that the appellants had never been subjected to electronic surveillance by the United States Secret Service, the United States Postal Service, the Bureau of Alcohol, Tobacco and Firearms or the Bureau of Narcotics and Dangerous Drugs.[4]

The District Court, 351 F.Supp. 325, denied the motions of the appellants in a Memorandum Order and Opinion dated August 17, 1972 and directed that they be taken into custody for the contempt citations. The Court, in its decision, reasoned that a pen register was not within the scope of the Omnibus Crime Control and Safe Streets Act of 1968; that the letter of August 7, 1972 was firm and unequivocal in its denial of "interception" as construed under 18 U.S.C. § 2515; and, that it was bound by the decisions of this Court in Fraser v. United States, 452 F.2d 616 (7 Cir., 1971) and In Re Womack, 466 F.2d 555 (7 Cir., 1972) when considering the efficacy of the denials of the Department of Justice and the evidentiary value to be given such representations.

On August 25, 1972 two subsequent motions were filed by the appellants, one a "Motion to Reconsider Ruling of August 17, 1972", and the other, "Amendment to Stay Mittimus". The District Court denied the former motion and allowed appellants to file an amendment to the Motion to Stay Mittimus *nunc pro tunc* August 15, 1972 for purposes of appeal.

In said amendment, appellants asserted that,

"7. The response of the government is insufficient in law and fact in that:

a. The attachment pre-dates the claim under Title 18 U.S.C. §§ 2515 and 3504.

b. It does not constitute an affirmance nor denial contemplated by the Statutes above.

c. It does not constitute an "official denial." See concurring opinion, White, J., in Gelbard v. United States, [408 U.S. 41], 92 S.Ct. 2357 [33 L. Ed.2d 179].

d. It does not cover the use of pen registers or similar devices.

"8. That assuming, arguendo, pen registers and similar devices are not within the ban of Title 18 U.S.C. §§ 2515 and 3505:

a. The use of the pen register is a violation of the Telecommunications Act.

4. The subsequent letters were forwarded to our Court and leave was granted to supplement the Record on Appeal. In a letter dated February 14, 1973 from the Assistant Attorney General to Sheldon Davidson in Charge of the Chicago Strike Force, Department of Justice, stated, "A review of the Department of Justice files disclosed no information indicating that the above-named individuals, Korman and Likas, or any premises known to be owned, leased or licensed by them, were the subject of a pen register surveillance by the Federal Bureau of Investigation as of August 7, 1972. A review of the files of the Internal Revenue Service indicated that a pen register surveillance was used with respect to Robert W. Likas as more fully set forth in our letter to you dated August 7, 1972. [From February 8, 1963 to May 22, 1963] A review of the Internal Revenue files disclosed no information indicating that Jack Korman or any premises . . ., were the subject of a pen register surveillance on or before August 7, 1972." In a letter dated March 23, 1973, between the same parties, pen register surveillance of Korman or Likas was denied by the Department of Justice, the Internal Revenue Service, the United States Postal Service, the United States Secret Service, Bureau of Narcotics and Dangerous Drugs or Bureau of Alcohol, Tobacco, and Firearms, from August 7, 1972 to the date of the letter.

b.  This Court is bound by United States v. Dote, 371 F.2d 176.

c.  The use of such evidence is expressly prohibited by the Fourth Amendment, and particularly by the decision of the Supreme Court in Silverthorne v. United States, 251 U.S. 385 [40 S.Ct. 182, 64 L.Ed. 319]. (See discussion of Mr. Justice Douglas in Gelbard, 92 S.Ct. at 2368–2372.)"

Meanwhile the appellants had been incarcerated on August 22, 1972 as a consequence of their contempt citations and remain in jail pending the outcome of these appeals.[5]

On October 11, 1972 a Petition for Writ of Habeas Corpus was filed on behalf of the appellants herein raising a multiplicity of issues concerning the constitutionality and existence of the Special February 1971 Grand Jury. The petition for the Writ of Habeas Corpus was dismissed by Judge Robson on November 7, 1972 in Memorandum and Order bearing the same date.

Subsequently, after a hearing on January 6, 1973, the Special February 1971 Grand Jury was again extended on January 10, 1973 upon the request of the members of the Special Grand Jury for another six months pursuant to 18 U.S.C. § 3331(a).[6]

In appeal No. 72–1778, the appellants question the concomitant denials of the Motion for Production of Reports of Electronic Surveillance and the Motion and Amendment to the Motion to Stay Mittimus.

Appeal No. 72–1930 concerns the propriety of the dismissal of the Habeas Corpus action.

### No. 72–1778

In response initially to appellants' Motion for Production of Reports of Electronic Surveillance, the government refused to reply. Prior to the hearing on August 15, 1972, the government supplied counsel for appellants with the aforementioned letter of denial dated August 7, 1972 denying any overhearings of appellants' conversations by means of electronic surveillance as defined in 18 U.S.C. § 2510 et seq. On appeal, appellants contend that assuming arguendo an official denial by the government precludes further refusals to testify by persons similarly situated with appellants, the inter-agency letter of denial in this case did not qualify as an official denial.

Our Court in In Re Womack, 466 F.2d 555 (7 Cir., 1972), stated at page 558 in an identical fact situation where potential grand jury witnesses alleged that electronic surveillance either led to the issuance of their subpoenas or constituted the source of information which motivated their production as witnesses,

"We can only conclude that neither Congress in the Omnibus Crime Control and Safe Streets Act or in the Organized Crime Control Act nor the Supreme Court in *Gelbard* intended to overrule or change the constitutional rule of *Alderman* [Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176] that only the person whose privacy is invaded by an illegal electronic surveillance has standing to object.

"Hence the representations in this case by the Department of Justice that the privacy of neither relator was subject to interference put 'the matter . . . at an end and the witness(es) must answer'."

Thus, the initial question which must be resolved is whether the letter of denial by the Department of Justice was sufficient to put the appellants' allegations of electronic surveillance to an end, foreclosing the necessity of additional affirmative action by the government or

---

5.  Under the provisions of 28 U.S.C. § 1826(a), the appellants so found to be in contempt are committed to custody for the life of the Grand Jury or until they answer questions before said Grand Jury.

6.  Without such an extension, the Special February 1971 Grand Jury would expire by its own terms on January 31, 1973.

requiring a hearing on the matter. See also Fraser v. United States, 452 F.2d 616, 621 (7 Cir., 1971).

■ As indicated in the previous opinions, our Circuit has deemed such letters of denial sufficient as a disclaimer of governmental intervention by electronic means. Yet, subsequent to these decisions, certain indiscretions have been revealed concerning illegal electronic surveillance which seem to militate for a more formal and binding denial than those which were found to be adequate in *Womack, supra,* and *Fraser, supra.* We therefore are of the opinion that an official governmental denial of electronic surveillance must at the very least be submitted in the form of an affidavit by a responsible government official. Various Circuits have considered the adequacy of an affidavit of denial in similar cases and deemed the affidavit sufficient as an official denial.[7] We agree this is the proper form of official denial. Consequently, a government affidavit of denial must be filed herein before the mandate can issue.[8]

■ We will therefore stay the mandate in this appeal not to exceed thirty days after the issuance of the circulated slip opinion in order for the government to comply with our request if possible. Said affidavit may be sworn to by the prosecutor personally in charge of this investigation or by the person in charge of the governmental agency conducting this grand jury probe. The affidavit need only deny electronic surveillance of appellants occurring after June 19, 1968,[9] and need deny pen register surveillance only when used in conjunction with an illegal wiretap for reasons hereinafter articulated. If compliance is not realized, this action will be remanded to the District Court for a hearing to determine why the mittimus should not be stayed.[10]

As a second issue, appellants assert the District Court erred in its failure to hold a hearing on whether questions asked before the Special February 1971 Grand Jury were predicated on information obtained from investigatorial leads supplied by the use of a pen register. Their assumption is that United States v. Dote, 371 F.2d 176 (7 Cir., 1966), decided prior to 18 U.S.C. § 2510 et seq., is still viable law in this Circuit and, therefore, the use of the pen register qualifies as an interception of a "communication" thereby prohibited by 47 U.S.C. § 605, 18 U.S.C. § 2510 and by *Dote, supra,* if used outside the statutory framework.

■ But, as conceded by the appellants on appeal, recent precedent indicates that the pen register is not an interception of communication under 18 U.S.C. § 2510(4). United States v. Lanza, 341 F.Supp. 405, 421 (M.D.Fla. 1972); United States v. King, 335 F. Supp. 523 (S.D.Cal.1971); United States v. Vega, 52 F.R.D. 503 (E.D.N. Y.1971); United States v. Escandar, 319 F.Supp. 295 (S.D.Fla.1970.)

With respect to the contention that the pen register is mutually prohibited by *Dote, supra,* and 47 U.S.C. § 605, of importance is that the reference to "any communication" in that statute which *Dote, supra,* and the Court in United States v. Caplan, 255 F.Supp. 805 (E.D.

---

7. United States v. Fitch, 472 F.2d 548 (9 Cir., 1973); Beverly v. United States, 468 F.2d 732 (5 Cir., 1972); In Re Grumbles, 453 F.2d 119 (3 Cir., 1971); United States v. Doe, 451 F.2d 466 (1 Cir., 1971).

8. In United States v. Doe, 451 F.2d 466, 467 (1 Cir., 1971) the First Circuit instructed the government after oral argument to supply the Court in affidavit form a denial of surveillance. The government complied with the request.

Therefore, we feel a similar request is not out of place at this time.

9. See 18 U.S.C. § 3504(a),(3).

10. Although we deem an affidavit of denial sufficient, we are of the opinion that a statement of denial of electronic surveillance under oath by a United States Attorney in charge of the probe or an agency head in charge of the investigation is likewise sufficient to formulate an official denial.

Mich.1966), construed to include the mechanical printout of phone numbers by a pen register, no longer appears in 47 U. S.C. § 605. The phrase was changed to "any radio communication" by Public Law No. 90–351, Title III, § 803, the same law which enacted Title 18, Chapter 119 (§§ 2510–2520). Therefore, the clear intent of Congress would seem to be that the interception of wire communications would be governed solely by the new Chapter 119. There have been no allegations by defendants that radio communications may have been intercepted in the present case, thereby precluding appellants' reliance on *Dote, supra,* to this extent.

On the other hand, *Dote, supra,* may still have some viability when the use of a pen register is realized coincidentally with a court-ordered wiretap. See United States v. Lanza, 341 F.Supp. 405, 422 (M.D.Fla.1972). In such a situation, the pen register translates the signal into a visual printout, while the tape recorder records the signal into a sound. A government affidavit denying use of electronic surveillance, which *inter alia* denies the use of wiretap, will suffice to quash any allegations of illegal use of a pen register in this case.

■ Therefore, if the government conforms with the requirement imposed by this opinion, which action will be noted in an addendum to the slip opinion to be sent to the publishing company, we affirm the decision of the District Court denying the aforementioned motions. An affidavit of denial will foreclose appellants' arguments in this appeal, for an official denial will be realized, and any illegal use of a pen register used in conjunction with an unauthorized wiretap will have been effectively denied.[11]

No. 72–1930

### I.

Appellants' first contention in challenging the propriety of the dismissal of the Petition for Writ of Habeas Corpus is that the statute which provides for the impanelment of a Special Grand Jury subjects them to an arbitrary and unreasonable classification. In pertinent part, 18 U.S.C. § 3331(a) provides that, Special Grand Juries shall be called by district courts in districts containing four million inhabitants or more or in *any* (emphasis added) district in which the Attorney General or his designate certifies that a Special Grand Jury is necessitated by criminal activity in that district.

Appellants refused to testify as witnesses called before a Special Grand Jury in Chicago, Illinois. They contend that because of their residence in a metropolitan area of over four million, they have been arbitrarily selected for more severe punishment than a person subpoenaed to appear before a grand jury in a smaller metropolitan or rural area, because the life of a Special Grand Jury —and consequently appellants' potential period of incarceration for contempt— may be extended for twice the term of a normal grand jury convened pursuant to Rule 6(g) F.R.Cr.P.[12]

They assert that their continued incarceration on this basis is a denial of equal protection as embraced in the due process clause of the Fifth Amendment, which concept was overtly articulated in Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

This unique argument fails to consider the entirety of the statute which clearly permits like Special Grand Juries to be convened in any district of the na-

---

11. This opinion has been circulated to the full Court. No judge has requested a hearing *en banc* to consider our prospective overrulings in part of the *Womack, supra, Fraser, supra,* and *Dote, supra,* decisions.

12. Rule 6(g) F.R.Cr.P. provides that no grand jury's term should exceed 18 months, whereas under 18 U.S.C. § 3331 (a) a Special Grand Jury sits for an initial 18 months with the proviso that it may be extended for an additional period of 6 months so as not to exceed a term of 36 months.

tion regardless of population. Upon considering the wording of the questioned statute, there is no indication that once any Special Grand Jury is convened anywhere in the country there is a variance of potential terms of such grand juries or of obligations to appear and testify.

■ We find no merit to appellants' claim of an arbitrary or unreasonable classification or that they were, in fact, denied equal protection under the laws and Constitution of the United States. See United States ex rel. Womack v. United States Attorney, 348 F.Supp. 1331 (N.D.Ill.1972).

## II.

A second argument raised by appellants in appeal No. 72–1930 is whether the District Court decision to extend the initial 18-month term of the Special February 1971 Grand Jury was reviewable, or an exclusive exercise of the discretionary powers vested in the Court by 18 U.S.C. § 3331(a) to extend the term.

Under 18 U.S.C. § 3331(a) the term of a Special Grand Jury may be extended either at the instigation of the jury members themselves by an affirmative vote of a majority of the members whereupon application for extension is made to the Chief Judge of the district for continuance, or, if in the opinion of the District Court the business has not been completed, that Court may order a six-month extension.

In this case, the District Court used the prerogative provided by statute and found the business of the Special February 1971 Grand Jury was not completed.

We are of the opinion as was the Court below that Petition of A & H Transportation, Inc., 319 F.2d 69, 71 (4 Cir., 1963), is dispositive of appellants' contention herein challenging the discretion of the District Court. The Court stated in 319 F.2d at page 71:

"The authority to convene or discharge a grand jury is vested in the District Court. Its exercise of its discretion to convene, or not to convene a special grand jury, or to discharge a grand jury is not reviewable on appeal, and a Court of Appeals cannot by mandamus, or any other extraordinary writ, inject itself into the discretionary area reserved to the District Court."

■ We therefore hold the initial extension of the Special February 1971 Grand Jury and the subsequent extension on January 10, 1973 were authorized by the statute and within the discretionary powers of the District Court. This is not reviewable on appeal, absent some showing of a flagrant abuse of discretion. No such showing was made or alleged herein.[13]

## III.

Appellants contend that under 18 U.S.C. § 3332(b) a District Court is empowered to impanel only two Special Grand Juries in a single district at any given time.[14] They assert the use of the word "an" signifies clear legislative intent to delimit the number of Special Grand Juries in a district. Therefore, they reason that the continuance of the Special February 1971 Grand Jury at a time when two additional Special Grand

---

13. We also are of the opinion that the Special February 1971 Grand Jury was properly extended a second time on January 10, 1973 at the request of the members of said Special Grand Jury.

14. 18 U.S.C. § 3332(b) provides, "Whenever the district court determines the volume of business of the special grand jury exceeds the capacity of the grand jury to discharge its obligations, the district court may order an additional special grand jury for that district to be impaneled."

Juries had been convened in the Northern District of Illinois was contrary to the mandate of the statute. We disagree.

■ The legislative history of the Organized Crime Control Act of 1970 indicates that the Special Grand Jury was created as an instrument to investigate organized crime in areas where such criminal activity was evident. It would thwart the purpose of the Act to limit to two the number of Special Grand Juries in a district when in fact four or five were necessary for adequate investigation of organized crime.[15]

#### IV.

We find no merit in appellants' constitutional challenges to the Organized Crime Control Act of 1970.

#### V.

■ We are of the opinion that, given the circumstances the appellants find themselves in at the time of this appeal, incarcerated in the Cook County Jail, their situation indicates a sufficient personal stake in the outcome of the controversy to confer standing to them in order to challenge the *de jure* existence of the Special February 1971 Grand Jury. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Since we have determined their challenges to said Special February 1971 Grand Jury are without merit, the dismissal of appellants' Petition for Writ of Habeas Corpus by the District Court is affirmed.

#### ADDENDUM To No. 72–1778

The government has complied with our request in Appeal No. 72–1778 and submitted to this Court an affidavit denying electronic surveillance of appellants for the time intervals in contention. Therefore, the decision of the District Court denying the motions considered in this appeal is affirmed.

---

15. This same argument was rejected in an unpublished ruling in the same district as this action cited as Gianola v. Robson, 72 G.J. 3363 (N.D.Ill.E.D.1972).