**In the Matter of A WITNESS BEFORE the SPECIAL OCTOBER 1981 GRAND JURY.**

**Appeal of Harold MANNER and the Metabolic Research Foundation.**

**No. 83–2986.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1983.

Decided Dec. 5, 1983.

**351**

Dennis M. Gronek, Dilling, Dilling & Gronek, Chicago, Ill., for appellant.

Cynthia Giacchetti, Asst. U.S. Atty., Dan K. Webb, U.S. Atty., Chicago, Ill., for appellee.

Before BAUER, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

This is an appeal by Harold Manner and the Metabolic Research Foundation (of which Manner is president) from an order of the district judge made under authority of 28 U.S.C. § 1826 holding the appellants in civil contempt for refusing to obey a grand jury subpoena commanding them to produce "any and all documents concerning or related to persons seeking referral or treatment from" either of the appellants, and directing that Manner be imprisoned until he obeys the subpoena. (Manner has been admitted to bail pending disposition of this appeal; no sanction was imposed on Metabolic Research Foundation for its contempt.) The grand jury is investigating alleged fraudulent sale of products such as laetrile in violation of federal law, and the appellants are targets of the investigation.

An initial question that we are obligated to consider although it has not been raised is whether the district judge's contempt order is appealable. Although much criticized, the rule of *Doyle v. London Guarantee & Accident Co.,* 204 U.S. 599, 607–08, 27 S.Ct. 313, 315–16, 51 L.Ed. 641 (1907), that an order of civil contempt against a party to the action in which the order is entered is not appealable, is too well established to be changed by us. See 9 Moore's Federal Practice ¶ 110.13[4] at p. 167 (2d ed. 1983); 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3917 at pp. 623–24 (1976). And there is no question that the contempt judgment in this case is civil rather than criminal. Manner was not punished for misconduct, for he can avert the sanction by complying with the subpoena. He carries the keys to the prison in his own pocket—the classic sign of civil contempt. And while the appellants are not parties to the grand jury investigation, because there are no parties to a grand jury investigation, the appeal rights of persons subpoenaed by a grand jury are as a rule no greater than those of subpoenaed parties. Like a party whose motion to quash a subpoena is denied, a person whose motion to quash a grand jury subpoena is denied may as a rule not appeal from that denial, see, e.g., *In re Special April 1977 Grand Jury,* 587 F.2d 889, 891 (7th Cir.1978), and it is not obvious therefore why, in light of *Doyle,* he should be allowed to appeal from a judgment of civil contempt for failing to obey the subpoena, when a party adjudged in civil contempt for disobeying a subpoena would not be.

Fortunately, the logic of *Doyle* has not been pressed quite so far. In *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940), the Supreme Court, in holding that a witness before a grand jury could not appeal the denial of his motion to quash, explained that "Whatever right he may have [to oppose the subpoena] requires no further protection ... than that afforded by the district court until the witness chooses to disobey and is committed for contempt. At that point the witness' situation becomes so severed from the main proceeding as to permit an appeal. To be sure, this too may involve an interruption of the trial or of the investigation. But not to allow this interruption would forever preclude review of the witness' claim, for his alternatives are to abandon the claim or languish in jail." (Citations omitted.) Although the words "civil contempt" do not appear in this passage, the last clause makes clear that the contempt

referred to is indeed civil rather than criminal.

The only thing that makes the passage less than conclusive authority for the appealability of the contempt judgment in the present case is that, in the two cases the Court cited for the proposition that a judgment of contempt for disobeying a grand jury subpoena is appealable, the appellant had sought a writ of habeas corpus under 28 U.S.C. § 2241(c)(1) ("in custody under ... the authority of the United States"), and was appealing from the denial of the writ as well as from the judgment of civil contempt. See *Wilson v. United States,* 221 U.S. 361, 369–70, 31 S.Ct. 538, 539–40, 55 L.Ed. 771 (1911); *Hale v. Henkel,* 201 U.S. 43, 46, 26 S.Ct. 370, 372, 50 L.Ed. 652 (1906). And when Congress, in 28 U.S.C. § 1826(b), established certain procedural ground rules for appeal by a recalcitrant witness (including a witness in a grand jury proceeding) from "the order for his confinement," its intent was "to codify present civil contempt practice," H.R.Rep. No. 1549, 91st Cong., 2d Sess. 33 (1970), U.S.Code Cong. & Admin. News 1970, 4007, as illustrated by a case in this circuit, *In re Grand Jury Investigation of Giancana,* 352 F.2d 921 (7th Cir.1965), which like *Wilson* and *Hale* had involved an appeal from a denial of a writ of habeas corpus as well as from the civil contempt order. See 352 F.2d at 922; H.R.Rep. No. 1549, *supra,* at 46.

■ From these materials an argument could be constructed that the rule of *Doyle v. United States* applies to grand jury witnesses and thus bars appeals by them from orders of civil contempt unless they seek and are denied habeas corpus, such denial being an unproblematic final decision for purposes of 28 U.S.C. § 1291. But it would be a feeble argument. The language and legislative history of section 1826(b)— all but the citation to *Giancana*—suggest that Congress assumed that civil contempt orders were appealable by recalcitrant grand jury witnesses whether or not they bothered to ask for habeas corpus; and since the final-judgment rule of 28 U.S.C. § 1291 is not constitutionally compelled,

any assumption on which Congress built section 1826(b) supersedes any contrary implications of *Doyle.* More important, it would be the quintessence of pointless formality to require a witness adjudged in civil contempt to file a habeas corpus petition, certain to be denied, as a condition precedent to appealing to us, and a formality with which Congress could not have wanted the appellate process to be encumbered; Congress ordained maximum expedition of the process, by requiring that the appeal be decided within 30 days after the notice of appeal is filed.

■ We conclude that we have jurisdiction of this appeal, and come to the merits, which require us to decide whether the district judge in ordering production struck a reasonable balance between the grand jury's need for the documents sought and the burden on the witness of producing them. See, e.g., *In re Petroleum Products Antitrust Litigation,* 680 F.2d 5, 7 (2d Cir. 1982). The appellants argue that the grand jury has no real need for the documents. But the grand jury is investigating illegal selling, and it is hard to see how it can do this without obtaining the sales records of the Metabolic Research Foundation. The appellants suggest that instead the grand jury subpoena the physicians to whom the Foundation refers inquiries about its system of treatment, and ask them who their customers are. But as these physicians may be targets of the investigation too, this is not a feasible suggestion. Moreover, although the appellants deny that they sell anything, the grand jury is not required to take their denial at face value; but without access to the Foundation's records of requests for treatment and referral the grand jury will not be able to identify persons who may be customers of the Foundation and of Manner, and thus will be unable to evaluate the appellants' denial.

■ The appellants do not claim that production of the documents sought would be burdensome in the usual sense of costly. Rather, by calling the persons who pay for the referral and other services rendered by the Foundation "members," and by describ-

ing the treatments that the Foundation promotes—which involve the ingestion of laetrile and vitamins to treat cancer and other diseases—as medically "unorthodox," the Foundation seeks to wrap itself in the mantle of cases such as *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), that hold that membership organizations engaged in the advocacy of ideas and opinions have a First Amendment right which may be infringed by an investigation that seeks discovery of their membership list. But the affidavits that the government submitted in the district court in connection with the appellants' motion to quash the grand jury subpoena present a very different picture. These affidavits, given by people who have sought treatment from the Foundation and from Manner himself for cancer and other serious illnesses, suggest that the appellants are participants with a number of doctors in a nationwide scheme for the sale of laetrile and vitamins for treatment of disease; and while the affidavits may give a false or incomplete picture of the appellants' operations, they support the district judge's characterization of those operations as constituting a commercial scheme in which the "members" of the Foundation are really customers or patients of the appellants. No one would argue that the First Amendment prevents a grand jury from investigating alleged Medicare or Medicaid fraud by subpoenaing a doctor's patient records, and that is the essential nature of the investigation here, so far as can be gleaned from the record before us.

■ As an aside, we note that while we have expedited the appeal in order to be able to decide it within 30 days of the filing of the notice of appeal, as required by 28 U.S.C. § 1826(b), we agree with the other circuits that have considered the question that where, as in this case, the appellants are free on bond (Manner) or not a natural person (the Foundation), the 30-day limitation is not jurisdictional, its basic objective being to minimize the time during which a recalcitrant witness is languishing in jail awaiting the decision of his appeal. See, e.g., *In re Rosahn,* 671 F.2d 690, 693 (2d

Cir.1982), and cases cited there. (One of the cases cited is our own *In re January 1976 Grand Jury,* 534 F.2d 719, 730 n. 11 (7th Cir.1976), but it is unclear whether a majority of the panel joined this footnote. See *id.* at 730–31 (concurring opinion).)

The judgment of contempt is

AFFIRMED.