757 F.2d 108
 In the Matter of GRAND JURY PROCEEDINGS OF AUGUST, 1984, IN
the UNITED STATES DISTRICT COURT FOR the CENTRAL
DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION.
Appeal of Randall GHIBAUDY.
 No. 84-2492.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 9, 1984.
Decided Nov. 9, 1984.
Opinion Feb. 27, 1985.
Certiorari Denied April 15, 1985.
See 105 S.Ct. 2025
 
 Michael L. Pritzker, Chicago, Ill., for appellant.
 Frances C. Hulin, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for appellee.
 Before BAUER and CUDAHY, Circuit Judges, and WISDOM, Senior Circuit Judge.*
 CUDAHY, Circuit Judge.
 
 
 1
 Randall Ghibaudy appeals his incarceration for civil contempt and moves for release pending appeal pursuant to 28 U.S.C. Sec. 1826. Ghibaudy was found in contempt and incarcerated on August 23, 1984. He filed his notice of appeal on August 27, 1984, and his appeal was docketed August 30, 1984, but he did not file his brief or motion for release pending appeal until October 10, 1984. Oral argument on the appeal was heard November 9, 1984, and an order was issued that day summarily affirming the order of contempt and incarceration and denying the motion for release. In our order of November 9, 1984, we stated that an order or opinion explaining our reasoning would be forthcoming. The present opinion is intended to be such an explanation. This procedure is, we believe, in accord with 28 U.S.C. Sec. 1826(b), which requires that appeals of orders of confinement for civil contempt be decided within thirty days, and with our prior practice, see In re Bonk, 527 F.2d 120 (7th Cir.), stay denied, 423 U.S. 942, 96 S.Ct. 350, 46 L.Ed.2d 274 (1975).[1]
 
 I.
 
 2
 On July 11, 1984, a subpoena was issued for Randall Ghibaudy for testimony on July 25, 1984, before the Grand Jury for the Central District of Illinois sitting in Springfield. The subpoena was served on Ghibaudy on July 16, 1984. On July 17, 1984, the United States Attorney sought and received an order from the district court granting immunity. The order was to become effective if subsequent to its date Ghibaudy refused to testify based on his privilege against self-incrimination. In response to the issuance of the subpoena, Ghibaudy's attorney contacted the United States Attorney's office by telephone with respect to Mr. Ghibaudy's appearance. The government advised Ghibaudy's attorney that an investigation had been proceeding since September, 1983, when Ghibaudy's attorney had met with the government concerning a previous grand jury subpoena, and indicated it was ready to seek immunity for Mr. Ghibaudy and to compel his testimony. Ghibaudy's attorney then indicated Ghibaudy would not testify. In following up this telephone conversation, the U.S. Attorney's office sent Ghibaudy's attorney a letter and copies of the motion to compel testimony and the Acting Assistant Attorney General's letter authorizing application for an order to compel testimony. Mr. Ghibaudy appeared with counsel on July 25, 1984, pursuant to the subpoena. However, due to the illness of the Assistant U.S. Attorney he did not testify. He agreed to return one month later at the next meeting of the grand jury, and was served with a subpoena commanding his appearance on August 22, 1984.
 
 
 3
 Mr. Ghibaudy appeared at the U.S. Attorney's office in Springfield on August 22nd, but was not accompanied by counsel. Counsel telephoned from Florida stating that he was en route to Illinois but did not know if he would arrive in time to assist Ghibaudy. Mr. Ghibaudy's appearance was continued until the following day. The Assistant U.S. Attorney who had been responsible for issuing the subpoena and investigating the case was not present, but another Assistant U.S. Attorney filled in. Shortly before Mr. Ghibaudy was called to testify on August 23rd, his counsel filed an Objection to Grant of Immunity, a Motion and Memorandum for Protective Order and Disclosure, and a Motion for Disclosure of Electronic Surveillance.
 
 
 4
 Mr. Ghibaudy refused to answer some of the questions put to him before the grand jury. He answered some questions, such as whether he had an attorney, whether he understood the substantive question and whether he had an answer. Ghibaudy took the questions down on a note pad, conferred with his attorney outside the grand jury chamber and, as the case might be, answered or refused to do so. After the refusals the United States Attorney filed a petition for a civil contempt order. The petition was considered by the district court later that day. After hearing arguments, the district judge recessed to consider the law as it was presented by counsel and the Assistant U.S. Attorney. At the conclusion of the hearing the district judge found Ghibaudy in contempt of court and remanded him to the custody of the United States Marshal without bond.
 
 
 5
 On August 27, 1984, Ghibaudy filed his notice of appeal. He then took until October 10, 1984, to file his brief and motion for release pending appeal. Oral argument was heard November 9, 1984, thirty days after Ghibaudy's brief was filed. We affirmed the contempt and incarceration order and denied the release motion that same day.
 
 II.
 
 6
 Ghibaudy's first argument is that it is a violation of due process and fundamental fairness for the government to compel testimony from a witness it admits it may indict. Ghibaudy claims that the sole purpose of calling him to testify was to induce contempt or perjury. In essence, Ghibaudy contends for transactional, not merely use and derivative use immunity. But use and derivative use immunity is all that is constitutionally required. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The government acknowledges that neither Ghibaudy's grand jury testimony nor any information derived from it may be used in any prosecution of him. And, as the government further acknowledges, it has a very heavy burden of affirmatively proving that any evidence it proposes to use in some future criminal prosecution is derived from a legitimate source wholly independent of the compelled testimony or any information derived from it.
 
 
 7
 But this burden does not devolve upon the government until such time as it charges or prosecutes Ghibaudy. See Kastigar, 406 U.S. at 460, 461, 92 S.Ct. at 1664, 1665. Thus the government is under no obligation to set forth under seal all the evidence it possesses at the time it compels testimony by the witness who is a prospective defendant. Ghibaudy's motion seeking such is, at this time, premature.
 
 
 8
 Nor is Ghibaudy entitled to be supplied with reports of his prior statements to government investigators. Failure to supply them is not akin to inducing perjury. Such an argument has been rejected by the First Circuit:
 
 
 9
 A grand jury witness has no general right to transcripts of his [prior] testimony. In re Bottari, 453 F.2d 370 (1st Cir.1972). Appellants' [sic] ill-defined fear that a "slight inconsistency" between past and present testimony might subject him to perjury prosecution is unfounded. The immunity granted under 18 U.S.C. Secs. 6002 and 6003 precludes the use of immunized testimony in a prosecution for past perjury, United States v. Watkins, 505 F.2d 545, 546 (7th Cir.1974), and appellant is not entitled to any protection for future perjury, United States v. Chevoor, 526 F.2d 178, 181 (1st Cir.1975).
 
 
 10
 In re Bianchi, 542 F.2d 98, 100 (1st Cir.1976). The exception in the immunity statute allows the use of immunized testimony only in prosecutions for future perjury, future false statements and future failure to comply with the immunity order, not for past acts. United States v. Watkins, 505 F.2d 545, 546 (7th Cir.1974). Grand jury testimony cannot be used in a prosecution for perjury for prior statements, and prior inconsistent statements cannot form the sole basis for prosecution for perjury in grand jury testimony. In re Grand Jury Proceedings: Appeal of Greentree, 644 F.2d 348, 351 (5th Cir.1981).
 
 
 11
 Ghibaudy's second argument is that he had a right to receive evidence of any electronic surveillance of him or his attorney. Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), and 18 U.S.C. Sec. 3504(a)(1) require that unlawful acts be affirmed or denied by the opponent of the party aggrieved. Illegal electronic surveillance is such an unlawful act. 18 U.S.C. Sec. 3504(b); Gelbard, 408 U.S. at 53, 92 S.Ct. at 2363. The occurrence of such an illegal act gives the objecting witness a defense to a contempt petition. Gelbard, 408 U.S. at 46-58, 92 S.Ct. at 2360-2366.
 
 
 12
 Here, Ghibaudy moved for disclosure of electronic surveillance. The motion was neither verified nor supported by affidavit. It merely alleged "[t]hat in conversations and questioning by federal agents of your Petitioner, questions were asked indicating knowledge of certain phone conversations," that he was "unaware of any way the government could have known of matters which were the subject of previous government questioning except through surveillance of his telephone conversations," and that therefore he believed "he and/or his premises, or those of his attorneys, have been subjected to unlawful electronic surveillance and that said surveillance had formed the basis of his being subpoenaed and the basis of the questions asked before the Grand Jury." Record on Appeal, Item 2. The government attorney then handling the case stated "on behalf of the Government that Mr. Ghibaudy was not the subject of any electronic surveillance now known to us, individually and based upon investigation." Transcript at 17. However, the government attorney was not the attorney "responsible for the issuance of the subpoena and the investigation of the case." Gov't Br. at 3. No affidavit was submitted, and the attorney's denial was not under oath. Although the government sent a transcript of the grand jury proceedings to the district court pursuant to a post-hearing motion to supplement the record, it did not include an affidavit denying electronic surveillance. These actions do not appear to be in quite the same spirit as the actions of the Solicitor General in Black v. United States, 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966) (per curiam) (vacating conviction when, after certiorari denied, the Solicitor General voluntarily informed the Court that review disclosed that electronic surveillance of attorney-client conversations had taken place), and in O'Brien v. United States, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967) (granting certiorari and vacating conviction where, in response to petition for certiorari, Solicitor General informed Court that electronic surveillance of attorney-client conversations had taken place).
 
 
 13
 Ghibaudy claims that the response here is insufficient to satisfy the requirements imposed on the government by United States v. Alter, 482 F.2d 1016 (9th Cir.1973). This contention must fail because Ghibaudy's allegation was unsupported and hence not the " 'concrete and specific showing' of probable electronic surveillance" necessary to trigger the Alter requirements. In re DeMonte, 667 F.2d 590, 595 (7th Cir.1981) (per curiam).
 
 
 14
 The government claims that because the Alter requirements do not apply, it need not satisfy the requirements of Korman v. United States, 486 F.2d 926 (7th Cir.1973). This contention, too, must fail. In re DeMonte does not hold that a charge of illegal electronic surveillance, neither made under oath nor substantiated by an affidavit may be "answered in kind," Gov't Br. at 7. Rather, In re DeMonte held that an affidavit sworn to by the prosecutor personally in charge of an investigation, though based only on the personal knowledge of the government attorney, would suffice as a government denial of electronic surveillance where the movant's claim lacked any evidentiary basis. 667 F.2d at 595.[2] Thus In re DeMonte adopts the Korman affidavit requirement; it does not carve out an exception to that requirement.
 
 
 15
 Here the in-court attorney was the First Assistant U.S. Attorney, who would presumably be aware of any electronic surveillance. (This presumption might quickly dissipate if the government were to frequently, or even again, rely without explanation on the sort of minimal response it supplied here.) We do not doubt the government could have submitted an appropriate affidavit if it realized such was required. The government attorney made his oral denial after the recess in the hearing, and the government supplemented the hearing record a few days later. We fail to see why the government could not have used one of these breaks to prepare the necessary affidavit. In Korman we stayed the mandate after issuing our opinion in order to allow the government to submit the required affidavit. 486 F.2d at 931-32. We believe a similar procedure would be appropriate here. If the government has not supplied the required affidavit within fourteen days of the issuance of this opinion, we will consider a petition for rehearing filed within the following seven days. In future contempt proceedings where allegations of illegal electronic surveillance are made, the government will, of course, have to submit its Korman affidavit to the district court at the appropriate time.
 
 
 16
 Ghibaudy's final contention is that he was given neither adequate notice of the contempt hearing nor a meaningful opportunity to present his defense, all allegedly in violation of his due process rights. "The test is whether [the contemnor] had an adequate opportunity to raise his claims and have them determined by the court." In re Bonk, 527 F.2d 120, 127 (7th Cir.), stay denied, 423 U.S. 942, 96 S.Ct. 350, 46 L.Ed.2d 274 (1975). Ghibaudy had such an opportunity. He knew in July 1984 that he was a witness subpoenaed before the federal grand jury and that an order had been entered compelling his testimony. On the 16th of that month his attorney indicated to the Assistant U.S. Attorney that Ghibaudy would not testify. Counsel was told, also in July, that the government would seek a contempt finding if Ghibaudy failed to testify. The refusal to testify, hearing and judgment of contempt did not take place until August 23, 1984, over a month later. He was then afforded an ample hearing and the opportunity to present arguments in support of the motions he had drafted and brought with him to the hearing. During the hearing Ghibaudy's attorney requested a continuance so that he could obtain a transcript of the grand jury hearing, claiming he was not sure that Ghibaudy had refused to answer. However, counsel had in his possession the note pad on which Ghibaudy had written down the questions asked by the government attorney and the answers developed in consultation with counsel. Further, at one point the district court tentatively offered Ghibaudy's attorney a continuance until Monday, August 27th. Ghibaudy's attorney then asked for additional time because he planned to go to Florida. The court recessed to consider Ghibaudy's arguments and supporting authority. Ghibaudy's attorney clearly arrived prepared to argue against a contempt motion, and did about as well as could be expected under the circumstances. We find that Ghibaudy had adequate notice and a meaningful opportunity to present his defense. There was no denial of due process. Accord In re Grand Jury Proceedings, Appeal of Whitehurst, 643 F.2d 226 (5th Cir.1981).
 
 
 17
 Ghibaudy had also filed a motion for release pending appeal, on the grounds that 28 U.S.C. Sec. 1826(b) requires appeals of civil contempt judgments to be decided within thirty days. When the motion was filed Ghibaudy had been incarcerated more than thirty days, and more than thirty days had elapsed since he had filed his notice of appeal. However, section 1826(b) also prohibits release on bail pending appeal "if it appears that the appeal is frivolous or taken for delay." 28 U.S.C. Sec. 1826(b). Ghibaudy's motion for release was filed simultaneously with his brief. We fail to see how we could have been expected to decide whether Ghibaudy's appeal was frivolous or taken for delay, much less decide his actual appeal, before he filed his brief. We did decide his appeal, and ruled on his motion for release, thirty days after he filed his brief. We believe that Ghibaudy's delay in filing his brief and motion estops him from including the period prior to his filings in the thirty day period of section 1826(b). In any event, his motion was for release pending appeal. Our order of November 9th decided his appeal and thus mooted the motion.
 
 
 18
 It was for these reasons that, in our Order of November 9, 1984, we affirmed the district court's order of contempt and incarceration and denied the motion for release pending appeal.
 
 
 19
 The government is ORDERED to submit an appropriate affidavit within fourteen days of the date of issue of this opinion. We will consider a petition for rehearing filed within the following seven days if no such affidavit is filed.
 
 
 
 *
 The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation
 
 
 [1]
 This circuit has never directly faced the question whether, where the contemnor is confined pending appeal, the thirty day period is jurisdictional, nor the question from when the thirty day period runs. We have not treated the time limit as jurisdictional where the contemnor is released on bond pending appeal or is not a natural person. In re Witness Before Special October 1981 Grand Jury: Appeal of Manner, 722 F.2d 349 (7th Cir.1983). See, e.g., In re Corrugated Carton Antitrust Litigation: Appeal of Conboy, 661 F.2d 1145 (7th Cir.1981) (en banc) (does not discuss question, but decided four months after appeal docketed; original decision was issued thirty days after appeal docketed, see 655 F.2d 748 (panel opinion) & 756 n. 6 (dissent)), aff'd on other grounds sub nom. Pillsbury Co. v. Conboy, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). It has been stated that In re Dionisio, 442 F.2d 276 (7th Cir.1971), rev'd on other grounds, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), is "silent authority" that even if the period is mandatory it is not jurisdictional, In re January 1976 Grand Jury: Appeal of Genson, 534 F.2d 719, 730 n. 11 (7th Cir.1976). But this footnote was not joined by the two other members of the panel, cf. In re Witness Before Special October 1981 Grand Jury: Appeal of Manner, 722 F.2d at 353 (unclear whether majority joined this footnote), and is incorrect. The footnote states that In re Dionisio was decided thirty-two days after the appeal was filed and was reversed on other grounds by the Supreme Court without any mention of the violated time period. However, the writer of the footnote apparently forgot that February 1971 had only twenty-eight days. The appeal was decided on March 25th, thirty days after the notice of appeal was filed on February 23rd. The appellants in In re Dionisio had been released on bail by this court, so the case would not be directly controlling even if it stood for what the footnote writer says it stands for. Appeal of Genson is itself, however, some authority that the period is not jurisdictional so as to divest the court of the power to act if it is exceeded, since that appeal was decided 72 days after filing. See 534 F.2d at 730 n. 11 (separate opinion)
 We believe that there are persuasive reasons for not treating the time period as jurisdictional and as running from the filing of notice of appeal. Suppose it were jurisdictional and commenced at the filing of notice of appeal. Then this court would lose all power to act on the appeal after thirty days. Now the statute could require (by implication) either that all confinement orders appeal of which was not heard within the period be vacated, or it could not. If it does, than the contemnor with a frivolous appeal can evade review and force his or her release. All he would have to do is file a notice of appeal and thirty days later a motion for release. So long as he took care to delay filing his brief until after the period expired, the court of appeals would have no basis on which to consider his appeal. (Unless, of course, we summarily affirmed all contempt orders in which briefs had not been submitted in time for consideration within the period.) If, on the other hand, the statute did not require vacating the confinement order, the worthy appellant would be in a bind. Even if she filed her brief promptly she could not ensure our consideration within the period, and would then remain confined without any appellate review of her argument. The first possibility would allow unworthy contemnors to defeat the contempt power of the court. The second would defeat the purpose of the time limit, which was to secure speedy review of meritorious appeals of confinement orders so the appellant would not have to rot in jail. See Melickian v. United States, 547 F.2d 416, 418-19 (8th Cir.) (reviewing legislative history), cert. denied, 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977).
 Therefore, we will not treat the period as jurisdictional and running from notice of appeal when the appellant does not file his brief until more than thirty days after filing the notice of appeal. Here we decided Ghibaudy's appeal thirty days after he filed his brief. We realize that this procedure is apparently at variance with the three prior reported decisions of this circuit where the contemnor has been confined pending appeal. See Martin-Trigona v. Gouletas, 634 F.2d 354 (7th Cir.) (per curiam) ("pursuant to Sec. 1826(b)" appeal decided on expedited basis: decision 30 days from order of contempt and confinement, order published later), cert. denied, 449 U.S. 1025, 101 S.Ct. 593, 66 L.Ed.2d 486 (1980); In re Special February 1977 Grand Jury: Appeal of Pavone, 570 F.2d 674 (7th Cir.) (order "to meet the requirements of Sec. 1826(b)" issued, apparently 30 days after notice of appeal (42 days after contempt order), explanatory opinion issued later), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978); In re Special February 1975 Grand Jury: Appeal of Lopez, 565 F.2d 407 (7th Cir.1977) (decided 36 days after contempt and confinement order, apparently 30 days after notice filed). See also In re Bonk, 527 F.2d 120 (7th Cir.), stay denied, 423 U.S. 942, 96 S.Ct. 350, 46 L.Ed.2d 274 (1975) (stating that period ends 30 days from date of appeal; order issued within period, explanatory opinion issued later) (contemnor on bond). But see In re January 1976 Grand Jury: Appeal of Genson, 534 F.2d 719 (7th Cir.1976) (implies period not "subject matter" jurisdictional: parties agreed Sec. 1826(b) did not apply, 72 days from notice of appeal to decision; government raised period in brief--one member of panel implied issue waived, other two did not consider question; however, confinement had been stayed pending appeal). However, there is no indication in any of these cases that the appellant delayed as long in filing his brief as Ghibaudy did here.
 Our research indicates that those of the other circuits that have considered the question do not find the thirty day limit jurisdictional, at least where the appellant is not a natural person or is free on bond, see, e.g., In re Rosahn, 671 F.2d 690, 694 (2d Cir.1982); Melickian, 547 F.2d at 417-19 (collecting and analyzing cases). Some other circuits have a practice of releasing confined contemnors whose appeals cannot be decided within the thirty day period, see, e.g., Matter of Fula, 672 F.2d 279, 282-83 (2d Cir.1982) (decision issued 52 days after appeal filed, bail granted after 30 days); In re July 1979 Term Special Grand Jury: Matter of Donohue, 656 F.2d 64, 66 (4th Cir.1981) (citing cases holding that where appeal cannot be decided within 30 days court should release contemnor until appeal decided); In re Grand Jury Proceedings, Horak, 625 F.2d 767 (8th Cir.) (confinement suspended from 30 days after date of filing appeal until appeal decided), cert. denied, 449 U.S. 840, 101 S.Ct. 117, 66 L.Ed.2d 47 (1980); Melickian, 547 F.2d at 418-19 (same). Other circuits have simply "extended" the 30-day period even though the contemnor is confined, and decided the appeal in the extended period, though not within the 30-day period, e.g., In re Grand Jury Proceedings, Gravel, 605 F.2d 750, 751-52 (5th Cir.1979), while others simply ignore the period, e.g., In re Grand Jury Investigation: Appeal of Hartzell, 542 F.2d 166 (3d Cir.1976), cert. denied, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977). Several circuits follow our procedure of deciding the appeal of a confined contemnor within the period and issuing an explanatory opinion later, e.g., United States v. Pacella, 622 F.2d 640, 642 n. 2 (2d Cir.1980), while some have actually decided the appeal and issued the opinion within the period, e.g., In re Grand Jury Proceeding 82-2, Nigro, 705 F.2d 1224 (10th Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983). We have found no case in which a court has found it lacked jurisdiction at the end of the period and dismissed the appeal, whether vacating the contempt judgment or not.
 This appeal was decided thirty days after Ghibaudy filed his brief. Neither party argued that some other time from which to measure, such as date of filing notice of appeal, is more appropriate. We do not mean to decide any issue not before us, or otherwise preclude the adoption of some other date as that from which the thirty day period runs or the practice of releasing confined contemnors on bail if we are unable to decide the appeal within thirty days. Consideration of such issues must await a proper case and prompt and helpful counsel, see In re Rosahn, 671 F.2d at 694 n. 1.
 
 
 [2]
 The court in DeMonte cites Korman v. United States, 486 F.2d 926, 931 (7th Cir.1973), in support of its minimal requirement of an affidavit of denial, but Korman also states that "a statement of denial of electronic surveillance under oath by a United States Attorney in charge of the probe or an agency head in charge of the investigation is likewise sufficient to formulate an official denial," 486 F.2d at 931 n. 10, where the allegation of illegal electronic surveillance is unsupported. The Korman court required the government to file an affidavit of denial sworn to by the prosecutor personally in charge of the investigation or by the person in charge of the governmental agency conducting the grand jury probe before it would issue the mandate