JOHN L. CHEEK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cheek v. Commissioner
Docket No. 7824-82.
United States Tax Court
T.C. Memo 1987-84; 1987 Tax Ct. Memo LEXIS 80; 53 T.C.M. (CCH) 111; T.C.M. (RIA) 87084; February 11, 1987. John L. Cheek, pro se. William E. Bogner, for respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Section 6653(a) [1]
Year
Deficiency
Additions
1978
$ 8,112.30
$405.61
1979
13,645.00
682.00
*82 The issues for decision [2] are: (1) Whether petitioner's purported conveyance of his lifetime services to a "family trust" was effective to shift to the trust the incidence of taxation on his salary as an American Airlines pilot; (2) Whether other income reported on the trust return was taxable to petitioner and should have been reported by petitioner; (3) Whether petitioner may deduct the cost incurred in establishing the trust; (4) Whether petitioner is liable for the section 6653(a) addition to tax for negligence; and (5) Whether petitioner is liable for damages under section 6673. *83 FINDINGS OF FACT A few documents have been stipulated into evidence. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Elk Grove Village, Illinois at the time the petition in this case was filed. During the years in issue, petitioner was employed by American Airlines, Inc., as a pilot (flight officer). The Forms W-2 attached to petitioner's Federal income tax returns (Forms 1040) show wages from American Airlines in the amounts of $33,935 for 1978 and $42,276 for 1979. On July 11, 1978, petitioner, an unmarried individual, executed a document captioned "Declaration of Trust." The trust indenture consisted of a preprinted form with blank spaces provided for applicable names. The trust indenture, together with other trust forms and instructions pertaining to formation of a family trust, had been purchased by petitioner from E. S. Publishers for the sum of $3,000. The trust was entitled the "John L. Cheek Family Trust" (hereinafter the Trust). The initial trustees of the Trust were Janet G. Cheek (hereinafter sometimes referred to as Janet) and Michael E. Cheek (Michael), petitioner's mother and brother, *84 respectively. At some unspecified date shortly after the formation of the Trust, petitioner also became a trustee of the Trust. [3]
The purpose of the Trust, as set forth in the declaration of trust, was to accept real and personal properties conveyed to the Trust *85 by its creator (petitioner), including "the exclusive use of his lifetime services and all of his earned remuneration accruing therefrom." (Emphasis in original text.) This transfer was made so that petitioner could "maximize his lifetime efforts through the utilization of his Constitutional Rights." (Emphasis in original text.) The Trust was established for a period of 25 years unless by unanimous vote the trustees should determine upon an earlier date or, in their discretion, liquidate the assets and close the Trust at any time "because of threatened depreciation in values, or other good and sufficient reason * * *." Upon liquidation, the assets of the Trust were to be distributed to the beneficiaries. The Trust was expressly declared to be irrevocable, not subject to alteration or amendment except as specifically authorized by the declaration of trust, and could only be terminated through distributions permitted by the declaration of trust. The Trust was to be administered by its trustees, with a majority vote thereof purportedly required for expenditures (including compensation of the trustees). The declaration of trust, as supplemented from time to time by *86 resolutions of the trustees to cover contingencies as they arose, was to serve as the "sufficient guide" in the administration of the Trust. Pursuant to the declaration of trust, the trustees were authorized "to do anything any individual may legally do in any state or country * * *." Further, "resolutions of the Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power." On July 17, 1978, petitioner purportedly conveyed to the Trust his interest in certain real and personal properties, including the "exclusive use of my lifetime services and all of the currently earned remuneration accruing therefrom." [4] The document allegedly effecting the conveyance does not designate which of petitioner's real or personal property was the subject of this purported transfer. The alleged conveyance document does indicate that petitioner's earned remuneration resulted from services rendered to American Airlines. Subsequent to the execution of this document, petitioner requested American Airlines to make his payroll checks out to the John L. Cheek Family Trust, rather than to petitioner individually. Such request was denied *87 by American Airlines because company policy required all payroll checks to be made out to the individual employee. In exchange for the purported conveyance to the Trust of petitioner's real and personal property, including his lifetime services and remuneration therefrom, the Trust issued all of its 100 units of beneficial interest to petitioner on July 17, 1978. Petitioner immediately surrendered such units to the Trust for cancellation, and the 100 units of beneficial interest were thereafter immediately reissued as follows: Name
Units
Janet G. Cheek
50
John L. Cheek
49
Jamie & Jody Cheek
1
In the event petitioner subsequently married, the one unit for the children was thereafter to be held in his wife's name. The rights of the owners of the units of beneficial interest were prescribed, in part, in the declaration *88 of trust. Pursuant to the declaration of trust, Ownership of a beneficial certificate shall not entitle the holder to any legal title in or to The Trust property, nor any undivided interest therein, nor in the management thereof; nor shall the death of a holder entitle his heirs or legal representatives to demand any partition of [sic] division of the property of The Trust, nor any special accounting; * * *. A checking account with the Suburban National Bank of Elk Grove Village (the Trust account) was subsequently opened in the name of The John L. Cheek Family Trust. Both petitioner and his mother were authorized signatories on the Trust account, only one signature being required to negotiate checks thereon. During the years in issue, both petitioner and his mother drew checks on the Trust account in payment of what appear to be personal expenses. [5]
*89 Petitioner also maintained a personal checking account in his individual name at the Bank of Elk Grove (hereinafter the personal account). Among the checks petitioner drew on the personal account during 1978 were the following: Check No. & Date
Payee
Amount
159 4-13-78
Trans-American Development Corp.
$2,000
171 5-23-78
Trans-American Development Corp.
1,572
172 6-15-78
TransAmerican Development Corp.
2,500
197 8-22-78
Charles E. Fisher Jr. Oil Producer
1,500
216 10-28-78
TADC TransAmerica Development Corp.
2,500
229 12-07-78
Trans-American Development Corp.
2,800
230 12-15-78
Charles E. Fisher Jr. (Oil Producer)
3,000
Total
$15,872
At trial, petitioner claimed that all these checks represented payment of drilling costs associated with several unidentified oil and gas ventures in which petitioner allegedly participated. During 1979, petitioner drew several checks on his personal account payable as follows: Check No. & Date
Payee
Amount
237 1-11-79
Mr. Charles E. Fisher, Jr.
$1,500
238 1-19-79
Mr. Charles E. Fisher, Jr.
6,000
243 2-01-79
TransAmerican Development Corp.
3,000
These checks also allegedly *90 pertained to investments in otherwise unidentified oil ventures. Other than these canceled checks and his vague, uninformative testimony, petitioner offered no evidence as to the nature of these purported investments or to support his claim that such checks were in fact payment of drilling costs on such oil ventures. Petitioner declined the Court's offer to keep the record open so that he could present documentation as to these oil and gas investments. On his 1978 and 1979 Federal income tax returns (Forms 1040), petitioner reported gross wages in the amounts of $33,935 and $43,314, respectively. The W-2 Form attached to each return reveals that all of petitioner's reported wages for his 1978 taxable year and that $42,276 [6] of the total wages reported for his 1979 taxable year represented compensation earned by petitioner as an employee of American Airlines. From the total amount of wages shown on his returns for the years in issue, petitioner deducted the amount of $17,654 in 1978 and the full $43,314 in 1979 as amounts he purportedly received as a nominee for the Trust, thereby reducing the amount of his gross income for each year in issue. Petitioner accomplished this by altering *91 line 12 of the Form 1040 he filed for each year. He marked out the existing heading of "Alimony received," substituted therefor the heading "nominee income for family trust," and entered the above figures as negative amounts. [7] Petitioner then increased the amount of his gross income by $5,500 in 1978 and $10,800 in 1979, reporting on line 20 of the Form 1040 he filed for each year that such amounts represented "consulting fees from family trust." [8] On his 1979 tax return, petitioner also reported a taxable distribution from the Trust in the amount of $1,998. [9]
*92 On the Schedule A attached to his 1978 return, petitioner claimed an itemized deduction in the amount of $3,000, designated as a "Trust Endowment Fee." This represented the cost of purchasing the E. S. Publishers forms and materials utilized by petitioner to establish the Trust. In a notation at the bottom of the Schedule A, petitioner indicated that the trust endowment fee represented an "expenditure for materials for the conservation & maintenance of property held for production of income." On his 1978 return, petitioner also claimed a Schedule C business loss from an unidentified oil and gas drilling business in the amount of $6,072. The Schedule C (Profit or (Loss) From Business or Profession) attached to petitioner's 1978 return indicates that such loss arose from "cost of goods sold and/or operations" of an unnamed oil and gas drilling activity. [10] No name or employer identification number is given for the sole proprietorship allegedly conducting such activities, the address given therefor being the same as that of petitioner's personal residence. *93 Petitioner's 1978 and 1979 tax returns show a final tax liability of $1,268 and $1,789, respectively, all of which was satisfied by income tax withholdings from petitioner's wages during each year. As will be discussed below, petitioner later sought refunds of these amounts. For taxable year 1978, a Form 1041, U.S. Fiduciary Income Tax Return, was filed in the Trust's name. Although the Form 1041 designates Janet G. Cheek as the fiduciary of the Trust, the Form 1041 was signed by petitioner in his capacity as trustee. See n.3, supra. The Form 1041 reported income items of the types and in the amounts as follows: Nature of Item
Amount
Dividends
$ 214
Interest
698
Capital Gain (Long Term)
[11] 1,796
Other Income
21,117
Total
$23,825
A notation on the face of the Form 1041 indicates that the "other income" item of $21,117 consists in part of the $17,654 amount petitioner deducted on his 1978 tax return as "nominee income of family trust," the remaining $3,463 "other income" reported by the Trust being somehow attributable to Janet G. Cheek, possibly her W-2 wage income. See n.4, supra.
*94 The Form 1041 filed for the Trust's 1978 taxable year also reported numerous deductions from income, as follows: Nature of Deduction
Amount
Interest
$1,277
Taxes
744
Housing (depreciation, repair &
maintenance)
3,200
Utilities
502
Consulting fees
9,500
Travel
210
Trustee's medical and dental
expenses
160
Telephone
150
Legal and accounting expenses
200
Auto Leasing expenses (gas, repair
& maintenance, etc.)
3,400
Professional dues, meetings, etc.
480
Office expenses
160
Total
[12] $19,983
There is no evidence in the record to support these deductions. The Form 1041 filed for the Trust's 1978 taxable year reported a Federal income tax liability of $470. A check in that amount drawn on the Trust account, signed by petitioner and payable to the Internal Revenue Service, was sent along with the Form 1041 for the Trust's 1978 taxable year and was subsequently cashed by respondent. In January of 1981 petitioner filed a refund claim for $470, asserting that the Trust had no tax liability for 1978. The Trust did not file a Form 1041 for its 1979 taxable year. [13]
*95 In December of 1980 petitioner attempted to revoke his 1978 and 1979 tax returns, as well as the Form 1041 filed for the Trust's 1978 taxable year, by means of a one-page document entitled "Notice of Revocation." The document purported to revoke any Form 1040 or 1041 petitioner "may or may not have filed" for his 1958 through 1980 taxable years, as well as cancel petitioner's signatures on the same. The document further stated that petitioner's decision was "made after doing extensive legal research and correspondence and seeking counsel.". In January of 1981 petitioner also filed a claim for refund for each of his 1978 and 1979 taxable years, such claims equaling the tax liability shown on the tax returns he filed for those years and which had been satisfied by withholding of taxes from his wages. The stated basis for these claims for refund was that: "Wages earned as an equal exchange for labor were withheld. To the best of my ability, I have determined I had no tax liability for 1978 [1979]." Petitioner also filed a claim for refund concerning the Trust's 1978 taxable year equal to the amount of tax shown due on the Form 1041 filed for that year. The stated basis for *96 the claim was that the Trust had no tax liability for 1978. By statutory notice of deficiency dated January 11, 1982, respondent determined that petitioner was taxable on the wages which he purportedly received from American Airlines as the Trust's "nominee," increasing petitioner's individual gross income for 1978 and 1979 by the amounts of $12,154 and $32,514, respectively. Those amounts represented the difference between the "nominee" income allegedly received from American Airlines for the Trust and the "consultant fees" purportedly paid to petitioner by the Trust. Respondent further determined petitioner to be taxable on the interest, dividends, and capital gains reported by the Trust on the Form 1041 filed for its 1978 taxable year, as well as dividends in the amount of $200 and interest in the amount of $700 allegedly "earned" by the Trust during 1979. Respondent also disallowed the "Trust Endowment Fee" claimed by petitioner in 1978 which represented the cost of purchasing the E. S. Publishers materials used to establish the Trust. Respondent further disallowed the ($6,072) business loss claimed by petitioner for his 1978 taxable year. Finally, respondent determined that *97 petitioner was liable for the section 6653(a) addition to tax for negligence for both his 1978 and 1979 taxable years. OPINION The present case began as another in the long line of so-called "Family Trust" cases, but along the way was transmogrified into another in an even longer line of frivolous, tax-protester cases. On numerous occasions, this Court and the various Courts of Appeal have considered similar "family trust" arrangements and have, without exception, rejected the taxpayer's attempts to shift the incidence of taxation by utilizing such devices. Hanson v. Commissioner,696 F.2d 1232 (9th Cir. 1983), affg. a Memorandum Opinion of this Court; Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982), affg. two Memorandum Opinions of this Court; Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981), affg. a Memorandum Opinion of this Court; Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Luman v. Commissioner,79 T.C. 846 (1982); Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); *98 Wesenberg v. Commissioner,69 T.C. 1005 (1978). Petitioner has presented nothing to suggest that the Trust involved herein is distinguishable in any meaningful way from those dealt with in the above-cited cases. Petitioner's attempt to assign his lifetime services to the Trust is ineffective to shift the incidence of taxation from him to the Trust. It is a basic principle of income taxation that income is taxable to the one who earns it. Lucas v. Earl,281 U.S. 111 (1930); Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). The courts have consistently followed this rule in all of the multitude of family trust cases which have been decided. Vnuk v. Commissioner,supra;Luman v. Commissioner,supra;Vercio v. Commissioner,supra;Markosian v. Commissioner,supra;Wesenberg v. Commissioner,supra;Horvat v. Commissioner,671 F.2d 990 (7th Cir. 1982), originally released as unpublished order 582 F.2d 1282 (7th Cir. 1978), affg. and adopting T.C. Memo. 1977-104, cert. denied 440 U.S. 959 (1979). *99 Moreover, in this case as in the many others that are factually indistinguishable, we conclude as we have before that the Trust is wholly devoid of economic substance of reality. Markosian v. Commissioner,supra.The Trust purportedly created by petitioner is not entitled to be recognized as an entity separate and distinct from petitioner for Federal tax purposes. Thus, the other income involved herein from dividends, interest, and capital gains remains taxable to petitioner. Furthermore, petitioner would be treated as the owner of the Trust under the "grantor trust" rules of sections 671 through 677 so that the income and expense [14] items reported by the Trust would still be attributable to him. Vnuk v. Commissioner,supra;Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra.
*100 Respondent's disallowance of the deduction claimed for the "Trust Endowment Fee" must likewise be sustained. There is nothing in the record to indicate that this "fee" represents anything other than the cost of purchasing the E. S. Publishers materials utilized to establish the Trust, a nondeductible personal expenditure under section 262. Luman v. Commissioner,supra,79 T.C. at 855-860; Contini v. Commissioner,76 T.C. 447, 452-453 (1981). Respondent's disallowance of the Schedule C losses claimed on petitioner's 1978 tax return must also be sustained. The claimed $6,072 loss allegedly represents drilling costs connected with certain unidentified oil and gas ventures in which petitioner allegedly participated. The only evidence presented by petitioner in support of this deduction was several canceled checks, payable either to TransAmerican Development Corporation or a Mr. Charles E. Fisher, Jr. There is nothing in the record, either in petitioner's testimony or in the checks themselves, to demonstrate that these checks represent payment of some deductible expense. While petitioner testified that he had documentation in regard to the *101 alleged oil and gas ventures, he declined the Court's invitation to keep the record open so that he could produce the documents, another indication that petitioner was more interested in delay and frivolous arguments than in pursuing the merits of his case. See n.14, supra. The evidence herein is simply insufficient to satisfy petitioner's burden of proof on this drilling issue. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent has also determined that petitioner is liable for the section 6653(a) addition to tax for negligence in both years before the Court. Petitioner has the burden of proof on this issue. Bixby v. Commissioner,58 T.C. 757, 791 (1972); Rosano v. Commissioner,46 T.C. 681, 688 (1966); Rule 142(a). Petitioner struck the Court as an intelligent person. He is a relatively well-compensated individual who earns his living as a pilot for American Airlines. Upon consideration of the record as a whole, we are convinced that petitioner knew that the tax laws did not permit him to avoid income taxes on his earnings by assigning them to a trust. The Court did not believe petitioner's testimony that *102 he relied upon the advice of lawyers and accountants either in regard to the family trust device or in regard to his protester-type arguments. Additionally, the "extensive legal research" petitioner himself claims to have conducted should have led him to the conclusion that any such purported advice was erroneous. To repeat what has been said before, "[n]o reasonable person would have trusted this scheme to work." Hanson v. Commissioner,supra,696 F.2d at 1234. We think petitioner entered into this elaborate charade and created the Trust merely as a flagrant tax avoidance scheme. We think he later shifted over to the tax-protester arguments as a continuation of that scheme. The addition to tax for negligence is amply justified in this case. The final issue herein is whether damages under section 6673 [15] should be awarded to the United States on respondent's motion. We would be remiss in our duties if we failed to award damages to the United States in the present case. Throughout both the discovery process and the trial herein, petitioner was uncooperative. At trial, despite repeated entreaties by the Court to present evidence supporting his position *103 on any substantive tax issues in this case and abundant opportunity to do so, petitioner chose merely to assert groundless and frivolous claims. This litany included the usual shop-worn and long-discredited arguments that he is not a taxpayer, that the tax system is voluntary and he does not volunteer, that his wages are not income, that requiring him to file tax returns violates his rights under the Fourth Amendment and other amendments to the United States Constitution, and that the Sixteenth Amendment was never properly ratified so that the entire Internal Revenue Code is invalid. These groundless and frivolous tax-protester arguments are so devoid of merit as to not warrant any further discussion by this or other courts. [16]
*104 As in this and other courts, the Court of Appeals for the Seventh Circuit, to which any appeal in this case will lie, has had a spate of these frivolous, tax-protester cases. The Seventh Circuit has clearly rejected frivolous arguments such as petitioner advances [17] and specifically has rejected the relatively "newer" protester argument that the Sixteenth Amendment was never properly ratified. [18] As the Seventh Circuit stated in Coleman v. Commissioner,791 F.2d 68, 69 (7th Cir. 1986): Some people believe with great fervor preposterous things that just happen to coincide with their self-interest. "Tax protesters" have convinced themselves that wages are not income, that only gold is money, that the Sixteenth Amendment is unconstitutional, and so on. These beliefs all lead -- so tax protesters think -- to the elimination of their obligation to pay taxes. The government may not prohibit the holding of these beliefs, but it may penalize people who act on them. Petitioner is one of those persons who has acted on his "preposterous" beliefs that his wages are not taxable and that the income tax laws are unconstitutional. His activities in that regard are already *105 known to the Seventh Circuit and to other Federal courts in Illinois. [19]
*106 Frivolous actions such as that brought by petitioner herein hinder and delay this Court in fulfilling its proper function of providing a forum for taxpayers who have legitimate tax disputes. Accordingly, in view of the waste of limited judicial and administrative resources caused by petitioner's dilatory actions and frivolous claims, we hereby award damages to the United States pursuant to section 6673 in the amount of $5,000. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. Framing the issues in this case has been more difficult than might appear from the recitation thereof. The statutory notice of deficiency (1) treated petitioner's family trust as an improper and ineffective attempt to assign his income as an American Airlines pilot and other income, (2) disallowed a deduction for a "trust endowment fee" which apparently was the amount petitioner paid for the family trust package, (3) disallowed a Schedule C loss which apparently involved some type of gas and oil drilling activity, and (4) determined a negligence addition. In his petition to this Court, petitioner assigned error only as to item (1) relating to the family trust. The Court could well deem the other issues to be conceded. See Rule 34(b)(4). Pre-trial procedures and preparations, particularly discovery and the stipulation process, were rendered inordinately difficult because of petitioner's frivolous, protester-type contentions and despite the Court's early warning about the frivolous nature of his contentions. A stipulation, merely as to certain documents, was ultimately executed, although petitioner insisted he signed "under protest" and was "compelled" by the Court. At trial, despite the Court's repeatedly beseeching him to present any facts and arguments pertaining to any substantive tax issues in the case, petitioner again made only frivolous, protester-type arguments. The Court offered to keep the record open for further documentation that petitioner said he possessed, but he declined the Court's offer. At the end of the trial the Court on its own motion perhaps could have simply dismissed the case for failure properly to prosecute. Rule 123(b). However, the family trust documents and some other documents have been stipulated into evidence. The transcript of the trial generally consists of petitioner's frivolous, protester-type arguments and petitioner's unbridled harangue against this Court as "biased and prejudiced," "a fraud," "a kangaroo court," and "this star chamber Sixteenth Century court." Still, there are a few nuggets of fact to be mined from the transcript. Accordingly, the Court will address the merits of whatever tax issues can be extracted from the record as a whole before addressing respondent's motion for damages under section 6673.↩
3. Both respondent and petitioner offered into evidence a copy of the Form 1041, U.S. Fiduciary Income Tax Return, pertaining to the Trust's 1978 taxable year. The Form 1041 proffered by respondent was a copy of the one actually filed with the Internal Revenue Service as the Trust's 1978 income tax return, dated April 15, 1978, and signed "John L. Cheek Trustee." The Form 1041 proffered by petitioner was undated and was never filed with the Internal Revenue Service. That Form 1041 was signed "John L. Cheek for↩Trustees." A cursory examination of the document proffered by petitioner reveals that the signature thereon has been crudely altered, the word "for" being subsequently squeezed in and the final "s" on Trustee being subsequently added thereto. Although petitioner testified at trial that he was never a trustee and merely served as "business manager" for the Trust, the Court did not believe his testimony.
4. By the same document, petitioner also ostensibly conveyed to the Trust as a part of his personal property the "exclusive use of the lifetime services of Janet G. Cheek and all the currently earned remuneration accruing therefrom," such services and remuneration apparently the subject of a purported antecedent transfer to petitioner.↩
5. Relatively few of the checks drawn on the Trust account during the years in issue were offered into evidence by petitioner. Such checks as were produced reveal that funds allegedly belonging to the Trust were used, inter alia, to pay gas, electricity, and telephone bills, as well as medical bills and insurance premiums.↩
6. Petitioner's 1979 return does not indicate the source of the remaining $1,038 petitioner reported as wages for that year. ↩
7. Attached to petitioner's 1978 tax return was a Form 1087, Miscellaneous Income, which also reported that petitioner purportedly received $17,654 from American Airlines as a nominee of the John L. Cheek Family Trust. No Form 1087 was attached to petitioner's 1979 tax return. The record does not establish who prepared the Form 1087; it appears likely that petitioner rather than American Airlines prepared it, since American Airlines had declined to issue his paychecks to the John L. Cheek Family Trust, and had issued him a W-2 for the full amount of his wages. ↩
8. Attached to petitioner's 1978 return was a Form 1099, Miscellaneous Income, purportedly evidencing the Trust's payment of the "consulting fee" to petitioner in taxable year 1978. ↩
9. The following distributions were also allegedly made by the Trust during 1979: Distributee
Amount
Janet G. Cheek
$2,039.00
Jamie Cheek
20.50
Jody Cheek
20.50
Petitioner proffered to the Court copies of Schedules K-1 purportedly showing such distributions and purportedly filed with the Trust's return for 1979. These Schedules K-1 were never filed with the Internal Revenue Service, nor was any Form 1041 filed by the Trust for the 1979 taxable year.↩
10. A separate footnote at the bottom of the Schedule C states that petitioner has "elected to carry forward any investment tax credits." Petitioner has introduced no evidence concerning what, if any, investment tax credits to which he claims to be entitled.↩
11. The $1,796 reported by petitioner as a long-term capital gain was subsequently reduced by a section 1202 deduction claimed on the Form 1041 in the amount of $898.↩
12. A notation on line 6 of the Form 1041, Net business and farm income or (loss), and on the bottom of the front page of the Form 1041, indicates that the Trust "elected to carry all trust oil business losses & investment tax credits forward.". The Form 1041 does not offer any insight into these alleged losses or investment tax credits, nor did petitioner produce any evidence relating thereto at trial. ↩
13. At trial, petitioner offered into evidence what he contended to be the front page of the Form 1041 for the Trust's 1979 taxable year, claiming that such was mailed to respondent. However, respondent refuted petitioner's claim that a Form 1041 was filed for the Trust's 1979 taxable year by introducing into evidence a Form 4340, Certificate of Assessments and Payments, pertaining to the Trust's 1979 taxable year and which indicated there was no record of any return filed for that year.↩
14. The Form 1041 filed for the Trust's 1978 taxable year claimed numerous deductions, most of which were nondeductible personal expenses but some of which might well have been deductible by petitioner if he had properly substantiated the items. Unfortunately, petitioner chose to pursue his frivolous, protester-type arguments and his attacks on this Court (see n.2, supra↩) rather than presenting evidence in support of deductions to which he may be entitled.
15. As applicable at the time the petition herein was filed, section 6673 provided, in pertinent part, that: Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision * * *. The provisions of section 6673 were amended by section 292(b), Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, 574 applicable to any action or proceeding commencedin the Tax Court after December 31, 1982, orpendingtherein on November 15, 1984, sec. 292(e) of TEFRA, supra, 96 Stat. at 574, as amended by sec. 160 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, 696. The "new" section 6673 to which petitioner is subject now provides, in pertinent part, that: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. * * * The Congress allowed a 120-day grace period before the new provision went into effect for pending cases to permit taxpayers to withdraw or settle their claims. During that grace period, respondent, with commendable fairness, offered petitioner an opportunity to concede the case before respondent filed his motion for damages. Petitioner's response was another litany of tax-protester arguments.↩
16. See, e.g., United States v. Stahl,792 F.2d 1438 (9th Cir. 1986), affg. an unreported District Court decision, cert. denied    U.S.    (January 12, 1987); Connor v. Commissioner,770 F.2d 17, 20 (2d Cir. 1985); Biermann v. Commissioner,769 F.2d 707, rehearing denied en banc 775 F.2d 304 (11th Cir. 1985); Edwards v. Commissioner,680 F.2d 1268, 1270 (9th Cir. 1982); United States v. Moore,692 F.2d 95 (10th Cir. 1979, as amended October 26, 1982); United States v. Wangrud,533 F.2d 495 (9th Cir. 1976), cert. denied 429 U.S. 818 (1976); Abrams v. Commissioner,82 T.C. 403 (1984); Rowlee v. Commissioner,80 T.C. 1111 (1983); McCoy v. Commissioner,76 T.C. 1027 (1981), affd. 696 F.2d 1234↩ (9th Cir. 1983).
17. Granado v. Commissioner,792 F.2d 91 (7th Cir. 1986), affg. T.C. Memo. 1985-237; Coleman v. Commissioner,791 F.2d 68 (7th Cir. 1986), affg. unreported decisions of the Tax Court and the District Court; Cameron v. Commissioner,773 F.2d 126 (7th Cir. 1985); Lovell v. United States,755 F.2d 517 (7th Cir. 1984); Granzow v. Commissioner,739 F.2d 265 (7th Cir. 1984); United States v. Koliboski,732 F.2d 1328 (7th Cir. 1984); United States v. Ekblad,732 F.2d 562↩ (7th Cir. 1984). 18. United States v. Ferguson,793 F.2d 828 (7th Cir. 1986), cert. denied    U.S.    (November 3, 1986); United States v. Foster,789 F.2d 457 (7th Cir. 1986), cert. denied    U.S.    (October 14, 1986); United States v. Thomas,788 F.2d 1250↩ (7th Cir. 1986). 19. See Cheek v. Internal Revenue Service,703 F.2d 271 (7th Cir. 1983) [Freedom of Information and Privacy Act case]; Cheek v. Doe,110 F.R.D. 420 (N.D. Ill. 1986) [memorandum opinion and order imposing $1,500 in costs and $10,000 as a sanction, in another case arguing that wages are not taxable and attacking the constitutionality of the income tax laws]; Schaut v. United States,585 F. Supp. 137 (N.D. Ill. 1984) [petitioner one of the plaintiffs in this suit to enjoin withholding of taxes from their wages]; Cheek v. Commissioner,↩ No. 82 C 2203, unreported order (N.D. Ill., Apr. 22, 1982) refusing to enjoin the Tax Court proceeding.